**Jaclyn G. OULDS, an individual, Plaintiff–Appellant,**

v.

**PRINCIPAL MUTUAL LIFE INSURANCE CO., an Iowa corporation; and Principal Financial Group, a Delaware corporation, Defendants–Appellees.**

Nos. 92–6029, 92–6177.

United States Court of Appeals, Tenth Circuit.

Oct. 6, 1993.

---

Jim D. Loftis, of Menzer Entz Loftis & Long, P.C., Oklahoma City, OK, Richard L. Denney, of Denney & Barrett, P.C., and Paul G. Smith, of Paul G. Smith, P.C., Norman, OK, and Carolyn S. Smith, of Carolyn S. Smith Law Office, Ponca City, OK, for plaintiff-appellant.

Doug K. Butler, Figari & Davenport, Dallas, TX, and James W. Berry, of Kerr, Irvine & Rhodes, Oklahoma City, OK, for defendants-appellees Principal Mut. Life Ins. Co. and Principal Financial Group.

Before TACHA and BALDOCK,. Circuit Judges, and BROWN,* Senior District Judge.

WESLEY E. BROWN, Senior District Judge.

The appeal in Case No. 92–6029 involves the propriety of the district court's grant of summary judgment to defendants-appellees Principal Mutual Life Insurance Company

---

* Honorable Wesley E. Brown, United States District Senior Judge for the District of Kansas, sitting by designation.

and Principal Financial Group (Principal) on plaintiff-appellant Jaclyn G. Oulds' claim of breach of the duty of good faith and fair dealing. In Case No. 92–6177, plaintiff appeals the court's denial of her application for attorneys' fees. Because we find no error in the judgments of the district court, we affirm.[1]

This case began when Ms. Oulds brought suit against Principal, her health insurance carrier, alleging breach of contract and breach of the duty of good faith and fair dealing in its denial of her claims for medical benefits. The district court, citing the need to avoid potential prejudice to Principal, bifurcated the breach of contract claim from the bad faith tort claim. I Appellant's App., doc. 8 at 4–5. The breach of contract claim was tried to a jury which returned a verdict in favor of plaintiff for approximately $18,-000.

After trial, Principal filed a motion asking the district court to reconsider its earlier denial of summary judgment on plaintiff's claim of breach of the duty of good faith and fair dealing. Upon reconsideration, the district court determined that, because evidence at trial had established a legitimate factual and legal dispute regarding Principal's liability for benefits, plaintiff could not meet her burden of showing that Principal had " 'unreasonably, and in bad faith, withh[eld] payment of the claim of its insured.' " III Appellant's App., doc. 21 at 11–12 (Order on Defendant's Motion to Reconsider) (quoting *Christian v. American Home Assurance Co.,* 577 P.2d 899, 904–05 (Okla.1977)).

Plaintiff's subsequent application for attorneys' fees was submitted to a magistrate judge who recommended that she be denied fees because she had not been the prevailing party under Oklahoma statutory law. *Id.,* doc. 23 at 7–8. In the alternative, the magistrate judge recommended that if the district court were to find that plaintiff had prevailed, the amount of her fees be reduced from $167,937, the amount plaintiff requested, to $107,742. *Id.* at 6, 12. The district

court agreed that plaintiff had not been the prevailing party and thus was not entitled to statutory attorneys' fees. *Id.,* doc. 24 at 2. The court, therefore, affirmed the findings and recommendation of the magistrate judge with regard to her ultimate entitlement to fees and rejected the magistrate's alternative reduction in the amount of those fees as unnecessary.

On appeal plaintiff argues that the district court erred in bifurcating her claims, in granting summary judgment to Principal, and in denying her attorneys' fees. We address these issues in the order presented.

*Bifurcation*

In challenging the district court's bifurcation of her case, plaintiff cites *Buzzard v. McDanel,* 736 P.2d 157 (Okla.1987), where the Oklahoma Supreme Court issued a writ of prohibition to the district court which had granted an insurer's motion for separate trials on issues similar to those here. The court held that the question of whether the plaintiff could legally recover from a third-party tortfeasor was not a separable and controlling issue in determining whether the insurer had refused to honor its insurance contract in bad faith. *Id.* at 159. While this authority would be persuasive in an Oklahoma state court, we note that bifurcation of trials is permissible in federal court even when such procedure is contrary to state law. *Sellers v. Baisier,* 792 F.2d 690, 694 (7th Cir.1986) ("Bifurcated trials are permissible in federal court under Federal Rule of Civil Procedure 42, however, and Rule 42 may be applied in diversity cases even though the state law employed to determine the substantive issues in the case prohibits bifurcated trials."); *see also Rosales v. Honda Motor Co.,* 726 F.2d 259, 262 (5th Cir.1984). Thus, because bifurcation was a permissible option open to the district court, our only review here is to determine whether the court abused its discretion in ordering the separation. *Moss v. Associated Transp., Inc.,* 344 F.2d 23, 25 (6th Cir.1965) (trial judge has discretion with respect to ordering separate

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. *See* Fed.

R.App.P. 34(a); 10th Cir.R. 34.1.9. The cases are therefore ordered submitted without oral argument.

trials). Because we see no indication that the district court abused its discretion, we affirm the district court on this issue.

*Bad Faith Claim*

The issue presented here is whether under Oklahoma law the trial court erred in sustaining summary judgment for Principal on Oulds' claim that Principal was guilty of the tort of bad faith.

■ We review the grant of summary judgment by the district court *de novo*, applying the same legal standard to the evidence in the record as did the district court. *Applied Genetics Int'l, Inc. v. First Affiliated ·Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990). In doing so, we determine "whether 'the pleadings ... and admissions, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Mosier v. Maynard,* 937 F.2d 1521, 1524 (10th Cir.1991) (quoting Fed. R.Civ.P. 56(c)). (In addition to the above-mentioned materials typically relied upon by the parties in a motion for summary judgment, the parties in this case also cited portions of the record from the first phase of the trial.)

■ The Oklahoma Supreme Court first recognized the tort of bad faith by an insurer in the case of *Christian v. American Home Assur. Co.,* 577 P.2d 899 (Okla.1978). In doing so, the court expressed its approval of the rule as it had been adopted by the California courts. Simply stated, the rule is "that an insurer has an implied duty to deal fairly and act in good faith with its insured and that the violation of this duty gives rise to an action in tort...." *Id.* at 904. The *Christian* court emphasized that it was not holding that an insurer who resists and litigates a claim made by its insured does so at its peril that if it loses the suit or suffers a judgment against it for a larger amount than it had offered in payment, it will be held to have breached its duty to act in good faith. *Id.* The court noted:

> We recognize that there can be disagreements between insurer and insured on a variety of matters such as insurable

interest, extent of coverage, cause of loss, amount of loss, or breach of policy conditions. Resort to a judicial forum is not per se bad faith or unfair dealing on the part of the insurer regardless of the outcome of the suit. Rather, tort liability may be imposed *only where there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured.*

*Id.* at 905 (emphasis added). As numerous cases since *Christian* have made clear, "[t]he insurer does not breach the duty of good faith by refusing to pay a claim or by litigating a dispute with its insured if there is a 'legitimate dispute' as to coverage or amount of the claim, and the insurer's position is 'reasonable and legitimate.' " *Thompson v. Shelter Mut. Ins.,* 875 F.2d 1460, 1462 (10th Cir.1989) (quoting *Manis v. Hartford Fire Ins. Co.,* 681 P.2d 760, 762 (Okla.1984)). The insurer will not be liable for the tort of bad faith if it "had a good faith belief, at the time its performance was requested, that it had a justifiable reason for withholding payment under the policy." *McCoy v. Oklahoma Farm Bureau Mutual Ins. Co.,* 841 P.2d 568, 572 (Okla.1992). "A [cause of action for bad faith] will not lie where there is a legitimate dispute." *Manis v. Hartford Fire Ins. Co.,* 681 P.2d 760, 762 (Okla.1984). Thus, in order to establish such a claim, the insured must present evidence from which a reasonable jury could conclude that the insurer did not have a reasonable good faith belief for withholding payment of the insured's claim. *McCoy,* 841 P.2d at 572.

■ The mere allegation that an insurer breached the duty of good faith and fair dealing does not automatically entitle a litigant to submit the issue to a jury for determination. *City Nat'l Bank & Trust Co. v. Jackson Nat'l Life Ins.,* 804 P.2d 463, 468 (Okla.App.1990). A jury question arises only where the relevant facts are in dispute or where the undisputed facts permit differing inferences as to the reasonableness and good faith of the insurer's conduct. *Id.* On a motion for summary judgment, the trial court must first determine, under the facts of the particular case and as a matter of law, whether insurer's conduct may be reasonably

perceived as tortious. *Id.* Until the facts, when construed most favorably against the insurer, have established what might reasonably be perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed. *Id.* "To hold otherwise would subject insurance companies to the risk of punitive damages whenever litigation arises from insurance claims." *Manis*, 681 P.2d at 762.

■ Principal maintains that it denied plaintiff's claim because of material omissions and misrepresentations in plaintiff's applications for health insurance. The plaintiff contends that Principal's denial of coverage raised an inference of bad faith, primarily because the inaccuracies in her applications were the fault of Principal's insurance agent. In order to determine whether Principal acted in good faith in denying the claim, we must evaluate Principal's actions in light of the facts Principal knew or should have known at the time plaintiff requested the company to perform its contractual obligation. *Conti v. Republic Underwriters Ins. Co.*, 782 P.2d 1357, 1362 (Okla.1989) (citing *Buzzard v. McDanel*, 736 P.2d 157, 159 (Okla.1987)).

### a. *Statement of Facts.*

In 1987, the plaintiff was suffering from various digestive symptoms including cramps, diarrhea, and rectal bleeding. In October of 1987, plaintiff was examined by her family physician, Dr. Donar, who performed a sigmoidoscopy and recommended that she have a colonoscopy. Plaintiff was subsequently examined by Dr. Donas' partner, Dr. Vyas, who performed a colonoscopy. Dr. Vyas told the plaintiff that she had ulcerative colitis and prescribed Prednisone and Alzulfidine for her condition. Plaintiff was uncertain of this diagnosis and decided to see another physician. She made arrangements to see Dr. Robinson, a specialist in gastroenterology. Dr. Robinson's records indicate that he saw the plaintiff on November 6, 1987, and again on December 16, 1987. During this latter visit Dr. Robinson performed a sigmoidoscopy. Dr. Robinson indicated to the plaintiff that she probably had an inflammatory bowel disease but that it was not ulcerative colitis. His records indicate that he believed that the condition was likely to be Crohn's disease, a bowel disorder similar to ulcerative colitis. Dr. Robinson told the plaintiff that he could not say for sure what was wrong until he performed a colonoscopy. He recommended that the plaintiff undergo another colonoscopy. Plaintiff declined at that time, however, telling Dr. Robinson that her insurance would not cover the cost of the procedure. (Plaintiff's former health insurance did not cover very many of the costs associated with her first colonoscopy.) The day after this visit to Dr. Robinson, plaintiff applied for health insurance with Principal. A Principal insurance agent, Ms. Anita Benjamin, assisted the plaintiff in completing an application form and wrote down responses to the questions in the application. The responses on the application failed to reflect plaintiff's history of bowel problems. The following questions appeared on the application form:

1. Is anyone getting or thinking about medical treatment or taking any medicine, drugs, pills, shots, etc?

7. Has anyone been to or consulted a doctor, chiropractor or any medical specialist or had blood tests or other diagnostic tests in the last 5 years?

8. Has anyone ever had nervous, respiratory, circulatory, digestive, genital-urinary problems, venereal disease or other infectious disease?

Questions 1 and 7 were marked "Yes" on plaintiff's application; question 8 was marked "No." In a portion of the application asking for full details for each question marked "Yes," plaintiff's application listed "hay fever" for question 1 and a "check-up" with Dr. Robinson for question 7 as a description of the nature of the illness or medical attention received.[2] Plaintiff signed the application

---

2. During the trial on the plaintiff's claim for breach of contract, Principal introduced evidence that the plaintiff had applied for health insurance with another company three days after the December 17, 1989, application with Principal. The responses on this other company's application were virtually identical to those contained in her application with Principal. Plain-

beneath a statement representing that all the information therein was true and complete.

In December of 1988, Principal advised plaintiff that there would be a substantial increase in premium rates for her health plan. As a result, plaintiff decided to switch to another Principal health plan. Ms. Benjamin again assisted the plaintiff in completing an application for the new plan. The application was filled out on January 14, 1989. In this second application, plaintiff was asked the following questions:

2. Is anyone now getting or thinking about getting medical treatment or taking any medicine, drugs, pills, shots, etc.?

3. Has anyone been to or consulted a doctor, chiropractor, or any medical specialist or had blood tests or other medical tests done in the past five years?

4. Has anyone been hospitalized or been told of a need to have medical tests, have surgery, or to be hospitalized?

7. Has anyone ever had gallbladder problems, ulcers, diarrhea, colitis, other digestive problems, hepatitis, cirrhosis, or liver problems?

I Appellee's App. at 20. Plaintiff's application was answered "no" on questions 4 and 7. Questions 2 and 3 were answered in the affirmative, but the explanations offered indicated that the only treatments needed were for flu, bronchitis, and allergies. Plaintiff signed the application beneath a statement representing that all the information therein was true and complete. Plaintiff became covered under the new health plan in February of 1989.

In August and September of 1989, Principal began receiving claim forms from some of plaintiff's medical care providers. As part of its investigation of the claims, Principal requested medical records from the health care providers. Some of the records indicated that the plaintiff had a significant prior medical history that was not disclosed in her application. Principal notified the plaintiff

that there would be a delay in the payment of her claims. When the plaintiff inquired as to the reason for the delay, she was informed that the company was conducting an investigation as to whether she had a pre-existing medical condition. The plaintiffs' claims were delayed while the company attempted to gather information from the doctors who had treated the plaintiff. As Principal obtained these records, it gradually became clear that plaintiff had had some type of bowel disease. This medical history was contradictory to the representations contained in plaintiff's initial and second applications for insurance. In February of 1990, the plaintiff filed a complaint with the state insurance commissioner concerning Principal's handling of her claim. In her complaint, plaintiff stated that she had initially taken out a policy with "some pre-existing health problems" but that "all doctors were listed" and she was "accepted with no riders." Plaintiff also indicated that when she switched policies in February of 1989, she voiced concern to Principal's agent, Ms. Benjamin, about the pre-existing problems but was told that on the second application they "only had to go back the last year on medical records" and that "they had all the other doctors listed" on her initial application. The complaint was forwarded to Principal. Principal sought a reply from Ms. Benjamin, who no longer worked for Principal. Ms. Benjamin sent a response indicating that the plaintiff had never disclosed her pre-existing condition. Principal obtained the opinion of its underwriters that had the information concerning plaintiff's medical history been known, the company would not have accepted plaintiff's application. On June 5, 1990, Principal notified the plaintiff that it was rescinding her policy on the grounds that material medical information had not been disclosed in her application.

At the trial on plaintiff's claim for breach of contract, plaintiff explained the discrepancy in her initial application by stating that she had revealed her medical history to the

---

tiff testified that she made full disclosure of her medical history to the other insurance company's agent. The agent disputed this assertion at trial. No evidence appears in the record concerning when Principal learned of this evidence. Conse-

quently, we assume that it is irrelevant for purposes of summary judgment on plaintiff's bad faith claim. Principal's good or bad faith must be determined by the facts known to it at the time it denied plaintiff's claim.

Principal agent, Ms. Benjamin, but that Ms. Benjamin decided not to list the previous health problems on the application. Tr. at 12. As to the second application, plaintiff stated that Ms. Benjamin told her that all they needed to know about was any health problems that had occurred within the last year. Tr. at 17. Ms. Benjamin denied that the plaintiff had disclosed her prior health problems. Ms. Benjamin stated that she had recorded the answers on the initial application just as plaintiff had answered them. Tr. Vol. 2 at 290–91. Ms. Benjamin indicated that on the 1989 application she had first asked the plaintiff whether there had been any changes in her health since the initial application was filled out, but otherwise denied that she had limited the questions on the application to events occurring in the past year. Tr. at 296–98.

b. *Application of Summary Judgment Standards.*

■ We find, as did the district court, that there is no evidence in the record reasonably tending to show that Principal acted in bad faith in denying the plaintiff's claim. *Cf. City Nat'l Bank & Trust Co. v. Jackson Nat'l Life Ins.*, 804 P.2d 463, 468 (Okla.App.1990). The evidence shows that Principal denied the claim in a good faith belief that it was entitled to do so on the grounds of misrepresentations by the plaintiff in the application.

For purposes of summary judgment, we accept as true the plaintiff's allegations that she informed Ms. Benjamin of her prior health problems, that Ms. Benjamin decided not to include those matters on the application, and that Ms. Benjamin only asked her about any changes in her health in the second application. Under the Oklahoma law governing the tort of bad faith, however, these "true" facts are not necessarily the material facts for determining whether the insurer acted in bad faith. Whether an insurer's actions reasonably give rise to an inference of bad faith must be determined "in light of all facts known or knowable concerning the claim" at the time plaintiff requested the company to perform its contractual obligation. *See Conti v. Republic Underwriters Ins. Co.*, 782 P.2d 1357, 1362 (Okla.1989).

When performance was initially requested by the plaintiff, Principal had medical records in its possession which indicated that the plaintiff's applications for insurance contained significant misrepresentations and omissions regarding her medical history. Instead of simply rejecting the plaintiff's claims based upon possibly incomplete information, however, Principal undertook an investigation to obtain plaintiff's complete medical history. While that investigation was under way, the plaintiff made known her assertion that she had told Ms. Benjamin about her prior medical problems. Principal sought a response from Ms. Benjamin, who denied the plaintiff's assertion. Thus, as of the time a decision was made to rescind the plaintiff's policy, the following facts were known to Principal: (1) plaintiff's applications contained materially false or misleading statements concerning plaintiff's prior health problems; (2) plaintiff claimed that she had orally disclosed her prior health problems to Ms. Benjamin and claimed that Ms. Benjamin decided not to include those matters on the first application and further claimed that Ms. Benjamin only asked her about any recent changes in her health at the time of the second application; and (3) Ms. Benjamin denied that the plaintiff had made any such disclosure of her health problems during either application and claimed that she had recorded the responses on the applications just as plaintiff had answered them. Given these facts, Principal had a legitimate basis for concluding that the plaintiff had failed to disclose material medical history. The representations in both of her applications, which by her signature she represented to be truthful, were inconsistent with her actual medical history. Moreover, the insurance company was presented with conflicting statements from the plaintiff and Ms. Benjamin as to what had transpired when the plaintiff's applications were filled out. The insurance company had no way of telling which of these persons was telling the truth. If Ms. Benjamin was being truthful about the plaintiff's disclosures, the company almost certainly had a valid defense to plaintiff's claim for coverage. *See Dennis v. William Penn Life Assurance Co.*, 714 F.Supp. 1580, 1582 (W.D.Okla.1989) (setting

forth the elements of a misrepresentation defense).

Undoubtedly, facts were in dispute as to whether or not plaintiff was entitled to coverage. "It cannot be said as it was in *Christian* that it was apparent that [the insurer] never had a valid defense to plaintiff's claim." *Manis v. Hartford Fire Ins. Co.*, 681 P.2d 760, 762 (Okla.1984). A reasonable jury could have found from the evidence that Principal had a defense to plaintiff's claim for coverage. *Cf. Manis*, 681 P.2d at 762. Given the facts known to Principal at the time a decision on payment was required, there was a legitimate dispute concerning coverage, which the insurance company had a right to have settled in a judicial forum. No reasonable inference of bad faith arises from the insurer's withholding payment based on a legitimate dispute.[3] *Manis, supra; Conti v. Republic Underwriters Ins. Co.*, 782 P.2d 1357, 1362 (Okla.1989); *City Nat'l Bank & Trust Co. v. Jackson Nat'l Life Ins. Co.*, 804 P.2d 463, 469 (Okla.App.1990); *Thompson v. Shelter Mut. Ins.*, 875 F.2d 1460, 1462 (10th Cir.1989). Absent some evidence reasonably tending to show bad faith, Principal is entitled to judgment as a matter of law.

In determining the facts that were known by Principal when it denied plaintiff's claim, we have relied upon the case of *City Nat'l Bank & Trust Co. v. Jackson Nat'l Life Ins.*, 804 P.2d 463 (Okla.App.1990), *cert. denied* (Okla. Jan. 23, 1991). Under the interpretation of the tort of bad faith expressed in *City Nat'l Bank*, the alleged knowledge and acts of Ms. Benjamin at the time of the applications (including her alleged knowledge of plaintiff's prior medical history) is not imputed to Principal for purposes determining whether Principal acted in bad faith in denying the claim. In *City Nat'l Bank*, the court was faced with a factual situation almost identical to the one before us. The plaintiff in the *City Nat'l Bank* case had health problems prior to the time he applied for life insurance. He obtained a life

insurance policy from Jackson National Life, the insurer, but no mention of the prior health problems was made in his application. A claim was made on the policy following the plaintiff's death. The insurer refused to pay, contending that plaintiff had misrepresented his physical condition in the application. An action was then brought against the insurer for breach of contract and for bad faith. It was alleged on behalf of the plaintiff that he had told the insurance broker of his prior health problems and that the agent had indicated that those problems did not have to be disclosed on the application. The trial judge submitted the plaintiff's breach of contract claim to the jury, which returned a verdict in plaintiff's favor, but he ruled as a matter of law that the insurer was entitled to judgment on plaintiff's claim of bad faith. The Oklahoma Court of Appeals affirmed both rulings. The court upheld the jury's verdict for breach of contract, finding that a factual dispute existed as to, among other things, plaintiff's intent to mislead the insurer in the application. In doing so the court specifically cited the case of *Atlas Life Ins. Co. v. Eastman*, 320 P.2d 397, 403 (Okla.1957), and noted its holding that the knowledge and acts of an agent would be imputed to the insurer for purposes of determining whether the insurer is liable on the policy. Despite this, the court affirmed the decision not to submit the bad faith claim to the jury, finding that such a claim was precluded as a matter of law. The court stated:

> The evidence adduced revealed Insurer's refusal of Appellee's claim *on what Insurer believed to be material misrepresentations of fact by Decedent* on the application for insurance, constituting grounds, if believed by the jury, for avoidance of liability. Insurer had a right to litigate this legitimate dispute.

*City Nat'l Bank*, 804 P.2d at 469 (emphasis added). Clearly, the court did not impute the alleged knowledge or acts of the agent to the insurer for purposes of determining the insurer's good or bad faith in refusing to pay

---

3. Plaintiff's brief suggests that an exception to this rule should apply where the dispute is based on conflicting accounts of an oral conversation between the insured and the insurer's agent. (*citing Jones v. Alabama Farm Bureau Mut. Casu-* alty Co., 507 So.2d 396 (Ala.1986)). As *City Nat'l Bank & Trust Co. v. Jackson Nat'l Life Ins. Co.*, 804 P.2d 463, 469 (Okla.App.1990) demonstrates, however, Oklahoma has not recognized any such exception.

the claim. Absent some material factual distinction between the instant case and *City Nat'l Bank*, the alleged knowledge and acts of Ms. Benjamin would not preclude summary judgment in favor of Principal on the bad faith claim. And, absent Ms. Benjamin's knowledge being imputed to Principal, there is no basis for concluding that the Principal agents who denied plaintiff's claim actually knew or should have known that plaintiff's application for insurance did not contain intentional misrepresentations.[4] All Principal knew was that when Ms. Benjamin was confronted with the plaintiff's allegations, she denied them.

In affirming the trial court's ruling in favor of Principal on this issue, we have attempted to faithfully apply all of the various court decisions construing the Oklahoma tort of bad faith, including the three most recent: *McCoy v. Oklahoma Farm Bureau Mut. Ins. Co.*, 841 P.2d 568 (Okla.1992), *Capstick v. Allstate Ins. Co.*, 998 F.2d 810 (10th Cir. 1993), and *Alsobrook v. Nat'l. Travelers Life Ins. Co.*, 852 P.2d 768 (Okla.App.1992). In *McCoy*, the insurer denied a claim for the loss of the plaintiff's residence. The house had been destroyed by fire. The insurer contended that the fire was intentionally set by or at the direction of the plaintiff. The only evidence that the fire was a result of arson, however, was the opinion of the insurer's expert. As the court fully explained in *McCoy*, the stated basis of the expert's opinion was flatly incompatible with the testimony of numerous eyewitnesses to the fire and was effectively impeached by other experts at trial. The expert's conclusion simply was not supported by the evidence and was not an objectively reasonable basis for denying the claim. (*See e.g., McCoy*, 841 P.2d at 571: "There was no evidence of independent fires in the two locations where Insurer's expert allege[d] that white gas had been poured and set afire.") Moreover, when combined with the manner in which the investigation of the claim was conducted, the circumstances gave rise to a reasonable inference of bad faith on the part of the insurer in denying the claim. As the *McCoy* court noted:

Insurer's field adjuster conducted her field investigation, and she found nothing suspicious. The field adjuster had issued a request to the home office that Homeowner receive an advance payment. However, that request for reasons unknown was subsequently canceled by Insurer's home office. This undisputed fact supports Homeowner's permissible inference that Insurer subsequently acted unreasonably and in bad faith in denying Homeowner's claim almost one year after the fire. Eight days after the fire, Insurer sent its expert to the scene.

841 P.2d at 571. Because the evidence gave rise to a reasonable inference of bad faith on the part of the insurer, the Supreme Court held that the claim was properly submitted to the jury. Significantly, the *McCoy* decision did not purport to overrule or undermine the reasoning expressed in any prior Oklahoma cases granting summary judgment on the tort of bad faith, such as *Manis v. Hartford* and *City Nat'l Bank*.

Just as the Oklahoma Supreme Court had done in *McCoy*, we held in *Capstick v. Allstate Ins. Co.*, 998 F.2d 810 (10th Cir.1993), that the plaintiff's claim for bad faith properly raised a jury question. In *Capstick*, Allstate had denied the plaintiff's claim of loss for a car that was destroyed by fire. Allstate produced an expert who testified that in his opinion the fire was a result of arson. Allstate argued that this evidence gave rise to a legitimate dispute that precluded a claim for bad faith. We rejected this argument because the opinion of the expert was the result of an investigation so inadequate that it gave

---

4. There was no evidence that Principal had actual knowledge of what happened between Ms. Benjamin and plaintiff in the application process. Nor was there any evidence from which Principal should have concluded that Ms. Benjamin, rather than the plaintiff, was being untruthful concerning what had been said in the application process. There was no evidence that Principal encouraged, authorized, or ratified the conduct which plaintiff alleges Ms. Benjamin engaged in at the time of the application. Also, plaintiff has pointed to nothing that would indicate that a more thorough investigation by Principal would have indicated that she, rather than Ms. Benjamin, was telling the truth. In sum, the fact that Principal chose under the circumstances to act upon the statement of its agent does not give rise to a reasonable inference of bad faith.

rise to a reasonable inference of bad faith on the part of Allstate. The *Capstick* opinion sets forth in detail the unsatisfactory manner in which Allstate conducted its investigation and how that investigation produced the "dispute" concerning coverage. The circumstances in that case reasonably suggested that Allstate manufactured its expert's opinion by giving him incomplete information concerning the fire. The evidence also showed that Allstate refused to examine the scene of the fire despite requests to do so, refused to interview material witnesses to the event in question, and otherwise failed to conduct any type of bona fide investigation to assess the likelihood of the plaintiff's explanation for the fire. The evidence permitted a conclusion that a reasonable insurer, had it been in possession of the facts that a proper investigation would have revealed, would not have denied coverage. The circumstances underlying the inadequate investigation performed by Allstate clearly distinguish that case from the instant one. No showing was made in this case that Principal overlooked material facts due to an inadequate investigation or that a more thorough investigation would have resolved the discrepancy in statements between plaintiff and Ms. Benjamin. *Cf. Pace v. Ins. Co. of North America,* 838 F.2d 572, 582 (1st Cir.1988) (Under Rhode Island law, in order to recover on a bad faith claim premised on a reckless investigation, the plaintiff must show that a reasonable insurer, proceeding under the facts and circumstances that a proper investigation would have revealed, would not have denied payment. (*citing James v. Aetna Life and Cas. Co.,* 109 Wis.2d 363, 326 N.W.2d 114, 117 (Ct.App.1982)).

Similarly, in *Alsobrook v. Nat'l. Travelers Life Ins. Co.,* 852 P.2d 768 (Okla.App.1992), the insurer's denial of certain claims without any investigation at all, together with the failure to pay claims that the insurer conceded were valid formed the basis of a bad faith claim that was properly submitted to the jury. The absence of a legitimate dispute as to these claims distinguishes *Alsobrook* from the case before us.

■ Numerous Oklahoma cases have ruled as a matter of law that no reasonable inference of bad faith arises when an insurer denies a claim solely because of the existence of a legitimate dispute. As these cases indicate, the fact that a reasonable jury could find in favor of the insurer based on all facts known or that should have been known by the insurer when it denied a claim is strong evidence that a dispute is "legitimate." *See Manis,* 681 P.2d at 762 ("Defendant's evidence, if believed by the jury, could have supported an arson defense.") In *McCoy* and *Capstick,* cases in which the question of bad faith was required to be submitted to the jury, the evidence of the insurer's defense to the underlying claim was so weak that a reasonable inference could be drawn that the insurer denied the claim in bad faith. Also, as *McCoy* and *Capstick* illustrate, other circumstances indicating bad faith may come into play. The investigation of a claim may in some circumstances permit one to reasonably conclude that the insurer has acted in bad faith. This is particularly true if the manner of investigation suggests that the insurer has constructed a sham defense to the claim or has intentionally disregarded undisputed facts supporting the insured's claim. None of these circumstances are present in the case before us.

■ Plaintiff's brief makes several arguments as to why she believes summary judgment is inappropriate. For example, plaintiff argues that the question of whether Principal denied her claim in good faith is "inherently" a fact question and must be left for the jury to decide. This position is inconsistent with several Oklahoma cases granting summary judgment to the insurer. *See Manis, Conti,* and *City Nat'l Bank, supra.* These cases make clear that the denial of a claim based upon a legitimate dispute does not imply bad faith and that judgment as a matter of law is to be granted to the insurer when the plaintiff fails to produce specific evidence of bad faith.

■ Plaintiff also suggests that the jury's verdict in her favor on the breach of policy claim means that Principal's denial of coverage was in bad faith. She argues: "The jury found for Oulds on the contract issue, which means that the jury must have decided that Oulds was telling the truth. Therefore, in

the jury's mind, there was no legitimate dispute." Aplt.Br. at 17. This argument fails to recognize that whether a dispute is legitimate must be judged from the facts that were known or that should have been known by the insurer. Our ruling on the bad faith claim is not inconsistent with the jury's determination favoring plaintiff on her contract claim. As the court explained in *Manis:*

> The fact that plaintiff prevailed [on the breach of contract claim] does not make defendant's actions bad faith per se. The defendant's actions were reasonable and legitimate. Facts were in dispute as to [plaintiff's eligibility for coverage]. The [insurer] had a right to have this dispute settled in a judicial forum. A *Christian* cause of action will not lie where there is a legitimate dispute.

*Manis,* 681 P.2d at 762.

■ Plaintiff next alleges Principal's bad faith is demonstrated by the fact that it denied her claims for the stated reason that she failed to disclose a condition of ulcerative colitis, yet her doctor at some point came to the conclusion that she did not have ulcerative colitis at all but was instead suffering from Lyme disease. This argument, however, does not undermine the conclusion that there was insufficient evidence of Principal's bad faith to raise a genuine issue of material fact. The facts known or knowable by Principal were that plaintiff had been treated for what two of her doctors believed was ulcerative colitis or Crohn's disease but that plaintiff had not included that information in her medical history. Simply because her physicians had some difficulty diagnosing the precise disease she was suffering from would not release the plaintiff from a duty to disclose the problem on her application, nor does it undermine the conclusion that Principal denied her claim in good faith. Whether plaintiff had ulcerative colitis or some other digestive disease is irrelevant to Principal's good faith in denying coverage on what it reasonably perceived to be legitimate grounds. *Cf. Dennis,* 714 F.Supp. at 1583 ("A misrepresented fact is material if a reasonable insurance company in determining its course of action would attach importance to the fact misrepresented.") Clearly, Principal had reasonable grounds to believe that the information on plaintiff's application was both false and material.

■ Plaintiff next argues that Principal's reliance on alleged misrepresentations in her first application was evidence of bad faith because the policy that was actually rescinded was based on her second application. We disagree. Under the facts of this case the two applications cannot be viewed in isolation.[5] *Cf. Timmons v. Royal Globe Insurance Co.,* 653 P.2d 907, 917 (Okla.1982) (The entire course of conduct between the parties is relevant in determining whether the duty of good faith has been breached.) First of all, whether it had actually happened or not, Principal had reasonable grounds to believe that the plaintiff had intentionally misrepresented facts on both of her applications. Principal was entitled to consider all of the circumstances in assessing whether there were grounds to rescind the policy, including the fact that the same inaccuracies appeared on both the first and second applications. The second application itself contained factual inaccuracies that Principal could have reasonably believed were grounds for rescinding coverage. Contrary to plaintiff's suggestion, nothing in the record suggests that Principal should have known that the inaccuracies in the second application were not intentional misrepresentations. Ms. Benjamin's letter of April 16, 1990, is not to the contrary; it disputed the plaintiff's assertion that Ms. Benjamin had informed her that prior medical history did not have to be disclosed on the second application because it had been disclosed on the first one.[6] Ms. Benjamin's

---

5. For this reason, plaintiff's argument concerning the possible effect of an incontestability clause in the second policy cannot remove Principal's denial of the claim from the realm of a legitimate dispute. The effect of such a clause under the circumstances of this case is clearly a legitimately disputed legal issue.

6. Ms. Benjamin's letter apparently addressed the plaintiff's administrative complaint, in which the plaintiff alleged that Ms. Benjamin "[t]old me we only had to go back the last year on medical records, that they had all the other doctors listed on my group application." Aple.App. Vol. I at 181. *See also* Vol. II at 347.

letter also flatly asserted that plaintiff had never revealed her medical history of bowel problems. Under the circumstances, Principal certainly had reasonable grounds for believing that the responses in the second application constituted misrepresentations. Secondly, tied up in this factual dispute is a legitimate legal dispute as to the effect of the inaccuracies in plaintiff's applications. *Cf. Dennis, supra,* 714 F.Supp. at 1582 (A misrepresentation by the insured, if material, need not be made with actual intent to defraud to be a basis for rescission.) In sum, nothing in the unusual factual situation leading to the rescission of the plaintiff's policy undermines the conclusion that this was anything other than a legitimate dispute.

Plaintiff also uses considerable space in her brief arguing the applicability of the "directed verdict test" on the facts of this case, referring to a rule developed by the Alabama Supreme Court in *National Savings Life Ins. Co. v. Dutton,* 419 So.2d 1357 (Ala.1982). That test in essence says that an insurer is entitled to summary judgment on a bad faith claim if its defense to an action for breach of the policy withstands a motion for directed verdict by the insured. This test was not referred to by the district court, and its opinion granting summary judgment on the bad faith claim does not rest simply on the fact that plaintiff's motion for directed verdict on the contract claim was denied. Rather, the opinion recognized that Principal's denial of plaintiff's claim because of a legitimate dispute meant that plaintiff had failed to meet her burden of showing bad faith under Oklahoma law.

 Plaintiff further suggests that Principal's bad faith was demonstrated by the fact that most of the evidence concerning her pre-existing condition was obtained by Principal after it had delayed payment on plaintiff's first claim in August of 1989 and

also by the fact that a final decision to rescind the policy was not made until May of 1990. Plaintiff implies that Principal gathered evidence in an attempt to manufacture a legitimate dispute as to coverage. We see no such inference of bad faith reasonably arising from the evidence. *Cf. Capstick, supra.* Records obtained initially by the company in its investigation indicated that the plaintiff had a prior medical history that was not disclosed on her application. Principal had a right to gather information concerning plaintiff's medical history prior to making a determination about whether rescission was warranted. Plaintiff has submitted nothing to show that the company was not reasonably diligent in pursuing this information. The correspondence in the record before us shows that, because plaintiff's medical history was not included in the application, Principal had to contact plaintiff's doctors one by one to obtain the numerous medical reports dealing with plaintiff's prior treatment. Plaintiff's allegation of bad faith in the investigation of her claims completely ignores the undisputed fact that her applications contained false statements that the company was entitled to investigate. Moreover, plaintiff disregards the fact that the insurance company had no means of ascertaining the truth from the conflicting statements of the plaintiff and Ms. Benjamin. While the court is bound on summary judgment to construe the evidence in plaintiff's favor, the court is not bound to draw inferences that are not reasonably supported by the evidence presented.[7]

Plaintiff argues that it was bad faith for Principal to contest liability under the policy where it had failed to comply with Oklahoma law regarding rescission. Citing Okla.Stat. tit. 36, § 3608, plaintiff argues that Principal failed to attach a copy of her application to the policy when issued, thus precluding the admission of the application in evidence.

---

7. Plaintiff's allegation that Principal's bad faith was demonstrated by "acts of fraud and deceit" is unpersuasive. The only example of an allegedly fraudulent act by Principal concerns a phone call the plaintiff made in February of 1990 to inquire as to the status of her claims. Plaintiff was told by a Principal agent that they were doing a pre-existing condition check and that this was a standard procedure for new insureds.

Aplt.App. Vol. II, Doc. 19, Exh. 21. Plaintiff points out that a memorandum written three months prior to this time indicated that a Principal agent was inquiring as to the possibility of rescinding plaintiff's coverage on the grounds of misrepresentation. Aplt.App. Vol. II, Doc. 19, Exh. 22. We find that this episode is not sufficient to raise a genuine issue of material fact as to bad faith under Oklahoma law.

Plaintiff, however, overlooks the fact that Subsection C of that statute refers to health policies and requires only that the insurer provide a copy of the application to the insured within thirty days of being requested to do so. There is no evidence that plaintiff requested a copy of her application and/or that Principal failed to provide it in a timely fashion.

■ Finally, plaintiff argues that Principal's acceptance of premiums after it canceled the policy is evidence of bad faith. We will not recite in full detail the facts surrounding the alleged acceptance of premiums by Principal after the date of rescission. We simply observe that the factual situation, including Principal's crediting of several checks written by plaintiff to the account of plaintiff's business partner, who was also insured with Principal and who shared a joint account with the plaintiff, does not support a finding of bad faith on the part of Principal.

The undisputed facts show a legitimate dispute as to whether the plaintiff had misrepresented material facts on her application. Principal had a right to withhold payment on the plaintiff's claim and to have this legitimate dispute determined in a judicial forum. Pursuant to the Oklahoma cases on the tort of bad faith, no material issue of fact exists concerning Principal's bad faith and Principal is entitled to judgment as a matter of law on the bad faith claim.

*Attorneys' Fees*

■ As mentioned above, the district court denied plaintiff attorneys' fees because she was not the prevailing party in the litigation. We agree with the district court and affirm. "[I]n diversity cases generally, and certainly in this circuit, attorney fees are determined by state law and are substantive for diversity purposes." *King Resources Co. v. Phoenix Resources Co. (In re King Resources Co.),* 651 F.2d 1349, 1353 (10th Cir.), *cert. denied,* 454 U.S. 881, 102 S.Ct. 370, 70 L.Ed.2d 195 (1981); *see also AME, Inc. v. Consolidated Freightways,* 783 P.2d 499, 500 (Okla.Ct.App.1989) (holding that federal law does not preempt Oklahoma attorneys' fee statute). Generally, a party cannot recover attorneys' fees unless recovery is provided for in a contract or by statute. *City Nat'l*

*Bank & Trust Co. v. Owens,* 565 P.2d 4, 7 (Okla.1977). The parties do not dispute that the insurance policy here did not provide for attorneys' fees. Plaintiff, therefore, must rely on statutory authority in order to claim fees.

Plaintiff first identifies Okla.Stat. tit. 36, § 3629 as justification for her recovery. That statute provides, in pertinent part:

> B. It shall be the duty of the insurer, receiving a proof of loss, to submit a written offer of settlement or rejection of the claim to the insured within ninety (90) days of receipt of that proof of loss. Upon a judgment rendered to either party, costs and attorney fees shall be allowable to the prevailing party. For purposes of this section, the prevailing party is the insurer in those cases where judgment does not exceed written offer of settlement. In all other judgments the insured shall be the prevailing party.

In this case, Principal offered "to reinstate [plaintiff's] health insurance coverage and to pay all her health-related expenses currently pending from her effective date of coverage...." II Appellee's App. at 467. This offer, however, came later than ninety days after Principal received plaintiff's proof of loss. Plaintiff, therefore, argues that she is thus the prevailing party and entitled to fees. We disagree.

■ In *Shinault v. Mid–Century Ins. Co.,* 654 P.2d 618, 619 (Okla.1982), the Oklahoma Supreme Court held that the failure of an insurer to make an offer of settlement within the ninety-day time frame specified in Section 3629 "imposes the loss of any chance for attorney fees on the insurer as a sanction...." *Id.* Thus, the insurer who fails to make an offer of settlement within ninety days cannot recover its fees from the insured. *Shinault* does not, however, stand for the proposition that, because the insurer has waived its right to fees, the insured is automatically the prevailing party. An insurer's failure to make an offer within ninety days, while acting to deprive the insurer of a chance to claim fees, does not make it impossible for the insurer to protect itself from a fee claim by the insured. The insurer can

defend against potential liability for the insured's attorneys' fees by making an offer of judgment which turns out to be greater than the judgment actually obtained by the insured. Contrary to plaintiff's argument, this rule applies to any offer of settlement made to the insured, not just to those which are made within the ninety-day window. *Id.* ("The insured ... is the prevailing party when the judgment is more than *any* settlement offer that was made, or when the insured receives a judgment when the insurer has rejected the claim.") (emphasis added). *See also Thompson,* 875 F.2d at 1463 (comparing judgment to all written settlement offers); *An–Son Corp. v. Holland–America Ins. Co.,* 767 F.2d 700, 703 (10th Cir.1985) (same). The *Shinault* court's reference to any settlement offer, and not to those made only during the ninety-day period, defeats plaintiff's argument that Principal's offer is legally ineffective.

■ Having established that Principal's offer was timely for purposes of defeating a claim for fees by its insured, plaintiff now must show that her judgment exceeded Principal's offer, as further required by the statute. Principal argues that the judgment obtained at trial did not exceed Principal's pretrial offer to pay all of her medical expenses and reinstate her coverage. Plaintiff counters that her recovery by way of the judgment exceeds the amount of the settlement offer when attorneys' fees, costs, and interest are added to the judgment.[8] In support of this argument, plaintiff cites *Carson v. Specialized Concrete, Inc.,* 801 P.2d 691, 692–93 (Okla.1990), in which the court, construing a statute similar to Section 3629, held that if an offer of settlement includes costs and fees, the trial court must calculate the amount of costs and fees incurred by the plaintiff up to the time of the offer in deciding who has prevailed. *Carson,* however, is distinguishable from this case because, here, the offer from Principal did not include costs and fees. It was a straight offer to cover all of plaintiff's medical costs to date and to reinstate her coverage, with no mention of plaintiff's

costs and fees. Because the settlement offer did not include her costs and fees, they will not now be added to her judgment for purposes of determining prevailing party status. In summary, we hold that under Section 3629 Principal's offer was timely, not to entitle it to fees, but to defeat a claim of fees by plaintiff; further, because plaintiff's judgment did not exceed the offer of settlement, she is not the prevailing party and is not entitled to fees under Section 3629.

■ As a second source of statutory authority for fees, plaintiff points to Okla.Stat. tit. 36, § 1219, which provides in part that "it shall be an unfair trade practice for any insurer to fail to notify a policyholder or assignee of record in writing of the cause for delay in payment of any claim where said claim is not paid within thirty (30) days after receipt of proof of loss." The statute further provides that in litigation based on such a claim, the prevailing party is entitled to reasonable attorneys' fees.

Principal does not argue that it complied with this statute, but rather that plaintiff "asserted no such [unfair trade practice] claim." Appellee's Br. at 46. The magistrate judge agreed with this contention, holding that "no claim was alleged for an unfair trade practice nor has the Court given this practice any consideration in pretrial and trial proceedings." III Appellant's App., doc. 23 at 7.

Plaintiff argues that the pretrial order refers to Section 1219 and that a pretrial order supersedes all the other pleadings. While plaintiff is correct that in her "contentions" section of the pretrial order at subparagraph (e) she does put forth a claim under Section 1219, I Appellant's App., doc. 10 at 13–14, there is no evidence in the record on appeal that any claim under this section was ever developed at trial.[9] The only evidence we can identify as having been presented at trial regarding the notice requirements of Section 1219 is plaintiff's testimony that, with regard to the disputed claims, Principal "would re-

---

8. Plaintiff does not dispute that the amount of the jury verdict was an amount equal to her incurred costs and did not include the reinstatement of her coverage, as did Principal's offer.

9. The copy of the pretrial order included in Volume I of plaintiff's appendix is missing Page 10.

peatedly send [her] notices that they needed more information and please be patient." III Appellant's App., doc. 26 at 23.[10] There was no evidence regarding when Principal received plaintiff's proofs of loss. Based on this record, plaintiff has failed to meet her burden under the statute to demonstrate that Principal's processing of her claims was an unfair trade practice. She, therefore, was not the prevailing party on this claim because she did not present any evidence to support it.[11]

The judgments of the United States District Court for the Western District of Oklahoma in both Case No. 92–6029 and Case No. 92–6177 are AFFIRMED.

---

10. The record does contain a copy of plaintiff's affidavit in which she avers that she never received responses from Principal by certified mail to her claims. I Appellant's App., doc. 6, exh. 1 at 1. There is no indication, however, that this affidavit was introduced at trial.

11. Plaintiff's motion for costs on appeal is DENIED.