FILED
United States Court of Appeals
Tenth Circuit

April 17, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

BILLIE SELLMAN, as Personal
Representative of the Estate of Betty
L. Sisco,

     Plaintiff - Appellant,

     v.

AMEX ASSURANCE COMPANY,
also known as IDS Property Casualty
Insurance Company, an Insurance
Company licensed in Illinois, doing
business in the State of Oklahoma,

     Defendant - Appellee.

No. 07-5089
(D.C. No. 05-CV-00545-GFK-PJC)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN, McKAY,** and **HOLMES**, Circuit Judges.

———————————————

     This action involves an alleged breach of the duty of good faith and fair

dealing by an insurer. Plaintiff - Appellant Billie Sellman, as personal

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

representative and administrator of the Estate of Betty Sisco,[1] appeals the district court's decision to grant partial summary judgment in favor of Defendant – Appellee AMEX Assurance Company on this bad faith claim. We review de novo summary judgment decisions. *See Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436 (10th Cir. 1993). "In doing so, we determine whether the pleadings . . . and admissions, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (alterations in original) (internal quotation marks omitted); *see* Fed. R. Civ. P. 56(c).

In June 2002, Ms. Sisco was involved in an automobile accident in a shopping mall parking lot. She incurred injuries and traveled to the hospital by ambulance. AMEX processed the claims on Ms. Sisco's car for this incident pursuant to her car insurance policy with the company. Only the claims arising under the uninsured/underinsured motorist portion of Ms. Sisco's car insurance policy are at issue in this case.[2]

Plaintiff alleges AMEX acted in bad faith because it neither promptly investigated nor paid all of Ms. Sisco's UM/UIM claims related to this accident which exceeded $17,000. AMEX asserts Ms. Sisco's total UM/UIM claim was

---

[1]Ms. Sisco, the original Plaintiff, passed away from an unrelated illness. The current Plaintiff is a male, Mr. Billie Sellman.

[2]Ms. Sisco's policy had a $100,000 limit for UM/UIM claims of this nature.

worth no more than $17,000. AMEX paid Ms. Sisco $7,000 in UM/UIM benefits, waived its subrogation rights to a $10,000 payout from the other motorist's insurance company, and also paid $5,000 in medical bills, the "med-pay" reimbursement limit on Ms. Sisco's policy. AMEX explains it has not acted in bad faith just because its evaluation of Ms. Sisco's UM/UIM claim was lower than her evaluation, or because it did not change its evaluation after receiving an additional medical report that finally linked her then current left shoulder condition to her car accident almost two years prior.

While AMEX acknowledges Ms. Sisco submitted medical and wage loss claims in excess of $17,000, AMEX asserts it has a right to refuse additional payments given that there is a legitimate medical dispute as to the cause of the pain in Ms. Sisco's shoulder post-accident, as evidenced by conflicting medical records from several of Ms. Sisco's doctors. AMEX insists Ms. Sisco cannot overcome the legitimate dispute in the medical documentation simply by stating the most recent doctor's report causally linking her shoulder injuries to the accident is the correct diagnosis and by ignoring the other reports that failed to make that causal connection. We agree.

Under Oklahoma law, an insurer "has an implied duty to deal fairly and act in good faith with its insured." *Christian v. Am. Home Assurance Co.*, 577 P.2d 899, 904 (Okla. 1977); *see also Sims v. Great Am. Life Ins. Co.*, 469 F.3d 870, 891 (10th Cir. 2006). A party bringing a bad faith claim "must plead all of the

elements of the tort and [bears] the burden of proof." *Manis v. Hartford Fire Ins. Co.*, 681 P.2d 760, 761 (Okla. 1984).  To satisfy all the elements,

> [a]n insured in an action of this nature is required to show that (1) he or she was covered under an automobile liability insurance policy issued by the insurer and that the insurer was required to take reasonable actions in handling the UM claim, (2) the actions of the insurer were unreasonable under the circumstances, (3) the insurer failed to deal fairly and act in good faith toward the insured in handling the UM claim, and (4) the breach or violation of the duty of good faith and fair dealing was the direct cause of any damages sustained by the insured.

*Brown v. Patel*, 157 P.3d 117, 129 (Okla. 2007).

In a bad faith claim, "[t]he mere allegation that an insurer breached the duty of good faith and fair dealing does not automatically entitle a litigant to submit the issue to a jury for determination." *Oulds*, 6 F.3d at 1436.

> A jury question arises only where the relevant facts are in dispute or where the undisputed facts permit differing inferences as to the reasonableness and good faith of the insurer's conduct.  On a motion for summary judgment, the trial court must first determine, under the facts of the particular case and as a matter of law, whether [the] insurer's conduct may be reasonably perceived as tortious.  Until the facts, when construed most favorably against the insurer, have established what might reasonably be perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed.

*Oulds*, 6 F.3d at 1436–37 (citations omitted).  However, "if there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in

each case." *Brown*, 157 P.3d at 129.

In Oklahoma, the essence of a bad faith claim "with regard to the insurance industry is the insurer's unreasonable, bad-faith conduct, including the unjustified withholding of payment due under a policy." *McCorkle v. Great Atl. Ins. Co.*, 637 P.2d 583, 587 (Okla. 1981); *see also Brown*, 157 P.3d at 129; *Manis*, 681 P.2d at 761. Oklahoma courts

> recognize that there can be disagreements between insurer and insured on a variety of matters such as insurable interest, extent of coverage, cause of loss, amount of loss, or breach of policy conditions. Resort to a judicial forum is not per se bad faith or unfair dealing on the part of the insurer regardless of the outcome of the suit. Rather, tort liability may be imposed only where there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured.

*Christian*, 577 P.2d at 905; *see also S. Hospitality, Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137, 1142 (10th Cir. 2004) (applying this standard to bad faith claims brought under Oklahoma law); *Vining ex rel. Vining v. Enter. Fin. Group, Inc.*, 148 F.3d 1206, 1213 (10th Cir. 1998) (same); *Oulds*, 6 F.3d at 1436 (same); *Brown*, 157 P.3d at 129.

Under Oklahoma law, "[a]n insurer clearly has the right to resist payment and litigate any claim to which the insurer has a reasonable defense," *Buzzard v. Farmers Ins. Co*, 824 P.2d 1105, 1109 (Okla. 1991) (emphasis omitted), or to resort "to a judicial forum to resolve a legitimate dispute," Brown, 157 P.3d at 126. "A central issue in any analysis to determine whether breach has occurred is

gauging whether the insurer had a good faith belief in some justifiable reason for the actions it took or omitted to take that are claimed violative of the duty of good faith and fair dealing." *Brown*, 2007 OK at ¶ 36, 157 P.3d at 129. "[B]ad faith cannot exist if an insurer's conduct was reasonable under the circumstances." *Barnes v. Okla. Farm Bureau Mut. Ins. Co.*, 11 P.3d 162, 170–71 (Okla. 2000); *see also Oulds*, 6 F.3d at 1436 (alteration in original) (internal citations and internal quotation marks omitted) ("The insurer will not be liable for the tort of bad faith if it had a good faith belief, at the time its performance was requested, that it had a justifiable reason for withholding payment under the policy. A [cause of action for bad faith] will not lie where there is a legitimate dispute.").

To determine what was reasonable under the circumstances, we must assess "the action of the [insurer] . . . in light of all facts known *or knowable* concerning the claim at the time [the insured] requested the [insurer] to perform its contractual obligation." *Conti v. Republic Underwriters Ins. Co.*, 782 P.2d 1357, 1362 (Okla. 1989) (emphasis added). "[T]he fact that a reasonable jury could find in favor of the insurer based on all facts known *or that should have been known* by the insurer when it denied a claim is strong evidence that a dispute is legitimate." *Oulds*, 6 F.3d at 1442 (internal quotation marks omitted) (emphasis added).

Even though an insurer may claim a legitimate dispute is the reason for its withholding payment or litigating a claim, "a legitimate dispute as to coverage

will not act as an impenetrable shield against a valid claim of bad faith. An insured may pursue a claim of bad faith even where the insurer has a legitimate defense to coverage. However, in order to pursue such a claim, the insured must present sufficient evidence reasonably tending to show bad faith." *Timberlake*, 71 F.3d at 343 (footnote and internal quotation marks omitted). To successfully rebut an insurer's defense of having a legitimate dispute as to coverage, "the insured must present evidence from which a reasonable jury could conclude that the insurer did *not* have a reasonable good faith belief for withholding payment of the insured's claim." *Oulds*, 6 F.3d at 1436 (emphasis added). In other words, "judgment as a matter of law is to be granted to the insurer when the plaintiff *fails* to produce specific evidence of bad faith." *Id.* at 1442 (emphasis added).

When a plaintiff bases a bad faith claim on an inadequate investigation theory, "the insured must make a showing that material facts were overlooked or that a more thorough investigation would have produced relevant information." *Timberlake*, 71 F.3d at 345. "[A]n inadequate investigation may give rise to a reasonable inference of bad faith by the insurer." *Willis v. Midland Risk Ins. Co.*, 42 F.3d 607, 613 (10th Cir. 1994). For example, one may reasonably conclude an insurer acted in bad faith "if the manner of investigation suggests that the insurer has constructed a sham defense to the claim or has intentionally disregarded undisputed facts supporting the insured's claim." *Oulds*, 6 F.3d at 1442. However, if an insured cannot show that an insurer overlooked material facts or

"that a more thorough investigation would have resolved the discrepancy" involved in the legitimate dispute, the insured cannot claim bad faith based on an inadequate investigation. *Id.*

In this case, even though Plaintiff raises legitimate concerns about AMEX's handling of Ms. Sisco's claim, he cannot prevail on a bad faith claim because he has not pled facts showing AMEX acted unreasonably or in bad faith under the circumstances. First, Plaintiff is not entitled to submit his claim to the jury because he has not provided conflicting evidence regarding the reasonableness of AMEX's conduct. AMEX's conduct was reasonable based on the defense of conflicting medical records. Even if Plaintiff could have shown AMEX knew of no conflict at the time it made its evaluations, Plaintiff could not prevail under Oklahoma law because we must assess AMEX's actions "in light of all facts known or *knowable* concerning the claim." *Conti*, 782 P.2d at 1362 (emphasis added).

Second, AMEX had a right to resist payment because it had a reasonable defense: there was a legitimate dispute as to the cause of the pain in Ms. Sisco's shoulder. Third, to pierce AMEX's defensive shield of having a "legitimate dispute," Plaintiff had to "present evidence from which a reasonable jury could conclude that the insurer did *not* have a reasonable good faith belief for withholding payment." *Oulds*, 6 F.3d at 1436 (emphasis added). He produced no specific evidence, *see id.* at 1442, that AMEX acted in bad faith under the

-8-

circumstances, especially given the evidence in the record indicating AMEX repeatedly requested substantiating medical records from Ms. Sisco's attorney to assist AMEX in determining if the medical bills warranted further payment in light of the existing medical dispute as to causation.

Finally, if Plaintiff hoped to prevail under an inadequate investigation theory, he had to show that a more prompt or thorough investigation would have yielded evidence requiring AMEX to pay on Ms. Sisco's claims. Even though it was AMEX's duty to adequately investigate Ms. Sisco's claims once it became clear that her attorney would not be providing the records she promised to provide, the further medical information that would have been available does not clarify the legitimate dispute. Conflicting evidence demonstrates a dispute still exists in the record. Some documents in the record indicate some of Ms. Sisco's medical and wage-loss claims are not directly related to her accident. At least one document indicates the claims are directly related to the accident. Finally, some documents simply list medical bills without attached medical records substantiating their relation to Ms. Sisco's accident.

AMEX did have a 2004 medical record from one doctor indicating Ms. Sisco's then current shoulder injuries were caused by her 2002 accident. However, that document merely heightened the dispute; it did not clarify it. Although there are additional medical claims for payment in the record after that point, there are no medical records accompanying those claims in the record. We

cannot conclude AMEX acted in bad faith when there are no medical records supporting the total amount currently claimed under Ms. Sisco's policy. There is also no evidence suggesting AMEX has constructed a sham defense to Plaintiff's claim or has intentionally disregarded undisputed facts.

Although AMEX has a duty to deal fairly and in good faith with its insured, it is not required to honor claims blindly upon an insured's request. It is possible medical and wage loss records exist somewhere that support Ms. Sisco's claims for additional funds, but we have no evidence of supporting medical documentation in the record that would lead us to believe AMEX's $17,000 evaluation was unreasonable. To the contrary, we have conflicting medical records as to the cause of her shoulder injuries. In addition to the 2004 record stating Ms. Sisco's shoulder injuries were causally related to her 2002 accident, there are medical records showing Ms. Sisco complained of left shoulder pain in the years prior to her accident. One doctor's report six months' post-accident stated specifically, "[Ms. Sisco] complains of pain, left shoulder, which she says, has become worse in the last few years." (Appellant App., Vol. II at 405.) Another doctor wrote he could not state with medical certainty Ms. Sisco's shoulder injuries were causally related to her 2002 accident. Even though AMEX did not have some of these records when it made its UM/UIM evaluations, a plaintiff may only have her claim submitted to the jury on an inadequate investigation claim if subsequent investigation shows there was a material

-10-

omission or if the new evidence resolves the dispute.

In this case, the dispute as to causation remains, and there was no material omission. AMEX therefore had a legitimate reason for refusing to pay additional money toward Ms. Sisco's claim.

Plaintiff has not pled facts showing AMEX acted unreasonably or in bad faith. No reasonable jury could find AMEX's investigation and evaluation of Ms. Sisco's claim were unreasonable given the legitimate dispute about causation of her shoulder injuries and the lack of medical and wage records supporting Ms. Sisco's claims. Absent any specific evidence of bad faith actions on AMEX's part, we must **AFFIRM** the district court's grant of partial summary judgment in favor of AMEX.

Entered for the Court


Monroe G. McKay
Circuit Judge