**SAVINGS BUILDING & LOAN ASS'N v. SEAMAN-PACKARD LUMBER CO. et al.**

No. 23991. Jan. 22, 1935.

Glenn O. Young, for plaintiff in error.

T. L. Blakemore, for defendant in error Seaman-Packard Lumber Company.

John R. Miller, for defendant in error O. L. Morgan.

PER CURIAM. This case was tried in the district court of Creek county before the judge of said court without a jury. The action originally was instituted by the plaintiff in error against Lula Ramsey and her husband to foreclose a real estate mortgage on certain property located in the city of Sapulpa: At the time said mortgage was given a fire insurance policy was taken out, being payable to the plaintiff in error as the mortgagee as its interest might appear.

A loss was sustained under said policy of insurance, and the property owner and the mortgagee both negotiated for some time with the insurance company attempting to adjust the amount of the loss. After considerable negotiation, it was agreed by all parties concerned that $300 should be paid and accepted in full for such loss. The only controversy presented at this time is as to the disposition of this fund. It is claimed by the property owner, Mrs. Ramsey, that she was authorized and directed by the plaintiff loan company to have the house repaired and use this money for such purpose, or as much as it required. The plaintiff loan company claims the money and denies any such arrangement. Mrs. Ramsey, claiming to act in pursuance of an arrangement with the plaintiff loan company, purchased or caused to be purchased lumber from the defendant lumber company, which is intervener in the case, to make such repairs, and the defendant Morgan, intervener, performed work in making such repairs by virtue of being employed by Mrs. Ramsey. Both the lumber company and the laborer were advised before they furnished the lumber and labor by Mrs. Ramsey, or her representative, that the plaintiff mortgagee had authorized her to cause said repairs to be made. While the work on such repairs was in progress, and after the lumber was furnished, the representative of the mortgagee stopped the work, advising parties that the company would not consent to any payment therefor. The check from the insurance company for the loss and damage was made payable to the property owner and to the mortgagee jointly, and the mortgagee refused to permit the proceeds derived from the insurance company to be applied to the payment for the lumber and labor performed by the interveners. The court thereupon appointed a receiver to indorse check, and had the money impounded in the hands of the receiver to await the order of the court.

A vast amount of testimony is taken and preserved in the record dealing with the question as to whether or not any contract or arrangement was entered into between the property owner and the mortgagee for the disposition of this fund. The court after hearing the evidence found that a contract and arrangement was made by the mortgagee and the property owner to apply this fund to the repair of the building, and that Mrs. Ramsey had authority to procure the lumber and employ the labor in so doing, and that the interveners were entitled to recover for the amount of the material furnished and the labor performed. The lumber company had filed a lien for its claim, which was foreclosed in the proceedings, and the laborer was given a judgment, and the same ordered to be paid out of the impounded fund. From this judgment and order of the court, mortgagee appeals.

Numerous propositions are advanced by the plaintiff in error in its brief, but from a full examination of the evidence and the briefs of the parties to this case, it appears that the entire controversy and contentions of all the parties in their brief can be settled by the determination of three questions, to wit:

(1) Who among the parties was entitled to have and dispose of this fund derived from the insurance?

(2) What disposition was made of the same by the parties so authorized to take the insurance?

(3) Was the material furnished and labor performed in pursuance of and according to authority given by the parties entitled to such fund?

It appears under the well-settled propositions of law that the mortgagee was entitled to the proceeds of this fund to the extent of its mortgage, and after the satisfaction of the mortgage, the remainder should be delivered to the property owner. This seems to be the almost universal application of the law in these cases. See 26 C. J. at page 438, where the text reads as follows:

"Where the insurance is taken out by the mortgagor for the benefit of the mortgagee, or is made payable to the mortgagee as his interest may appear, the mortgagee is entitled to the proceeds of the policy to the extent of his mortgage debt, holding the surplus, if any, after the extinguishment of his debt, for the benefit of the mortgagor."

This disposition of the fund, however, is subject to any arrangement and determination that the parties may make while en-

gaged in a mutual attempt and effort to collect the fund. 26 C. J. at page 439, reads as follows:

"Where pending an action on the policy the mortgagee and mortgagor agree to divide any judgment that might be recovered, the agreement impresses the judgment with an equitable trust in favor of the mortgagee."

It appears that the authority heretofore referred to was based upon a decision where the action was brought by the property owner to collect the fund, and the court held that the arrangement so made by the parties would be enforced.

Applying the foregoing authorities, the only remaining question is as to what arrangement was made for the disposition of the funds. It appears that J. R. Spalding was a representative of the company, and did all the dealings in connection with this loan and insurance. It is claimed by Mrs. Ramsey that a complete arrangement was made with Spalding as to the disposition of this fund, and that he authorized her to have the repairs on this house made. This is positively denied by Spalding. There is no question apparently involved in this case as to Spalding's authority to make such an arrangement, but the only claim made is that he did not make it.

In order to determine whether such authority was given Mrs. Ramsey, reference should be made to the letters written by Spalding to Mrs. Ramsey, and which are offered in evidence and admitted to be copies of the letters of Spalding. The first letter was written on September 30, 1930. We quote the following from Spalding's statement in this letter:

"So I would advise that you do not accept less than $300 in settlement of this loss, and as you say, we can then do the best possible to get the house repaired, and put whatever balance there may be after you do the work, on the loan; but I would not accept less than $300."

The next letter is dated October 4, 1930, and we quote the following from the same:

"We are entitled to the entire $300, as it will cost $348 according to their own estimate to repair the building, and they are trying, as they seem to always do, to pay less than the loss—realizing that you need the money to make the repair."

It is plainly the import from these letters that this fund was intended to be used in the repair of this building. In the face of these statements by the representative of the mortgagee, who had authority to agree to any disposition of this fund, if he took this attitude in these letters, why is it not perfectly consistent with his position therein taken that he would agree and instruct the property owner, Mrs. Ramsey, to have these repairs made? It further appears from the testimony of Mrs. Ramsey that no objection was made until these repairs were well on their way.

There is no dispute but what the lumber company furnished this lumber, and that it was ordered by one of the mortgagors, Mr. Ramsey, to be used to repair these premises. It is claimed by the mortgagee that the work on this building was improperly and unskillfully performed. There is no claim that there were any defects in the lumber and material furnished, and the lumber company could not be responsible for the unskillfulness of the work in making the repairs. It is further claimed that some of the labor performed on the building was unskillfully performed. It is not shown that intervener Morgan performed this part of the work, and in fact he states in his testimony he did not. There were other persons working on this building, who are not claiming compensation here for their work.

It appears that the finding of the court is well supported by the evidence. That authority was given by the mortgagee to Mrs. Ramsey to have these repairs made, and if she had such authority she in her own behalf and as agent for the mortgagee had a right to purchase this lumber and employ the labor. In any event, the court trying this case heard this testimony, and had the witnesses before him, and made his finding as to the facts in the case, and these findings are amply supported by the evidence, and upon such finding, if the owner of the property and the mortgagee made such arrangement and agreement to have this building repaired and the fund derived from the insurance applied to satisfy the same, the same amounted to a contract and agreement by both of these parties to pay the necessary amount for the material and labor in making such repairs. The liability of the plaintiff, however, not to exceed the amount received from the insurance, and if, after the labor the material was furnished, the parties refused to apply the proceeds of the insurance to this purpose, the court was justified in rendering a judgment against either or both of them for the amount of such repairs and labor not to exceed the amount

of the insurance, and it being a contract of the mortgagee as well as the property owner, the parties or either of them had a right to file a lien for the material or labor, and the same could be foreclosed the same as any other lien.

The foregoing conclusion having been reached, it is the judgment of this court that the findings made by the trial judge are fully sustained by the evidence, and the law as applied by the trial judge is properly applied, and it is ordered that the judgment and decree of the trial court in this case be affirmed and the judgment of the court ordered carried out.

The Supreme Court acknowledges the aid of Attorneys Sam P. Ridings, C. D. Roseman, and Nathan Scarritt in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. R'dings and approved by Mr. Roseman and Mr. Scarritt, this cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, by a majority of the court, this opinion was adopted.