**Ralph McCOY, Appellee,**

v.

**OKLAHOMA FARM BUREAU MUTUAL INSURANCE COMPANY, Appellant.**

**No. 68085.**

Supreme Court of Oklahoma.

March 24, 1992.

As Amended on Rehearing Sept. 15, 1992.

Shirley, Stephenson, Shirley & Webber, Tom R. Stephenson and Christine Beadle, Watonga, for appellee.

Cathcart, Gofton & Stratton, W.R. Cathcart and Allison Herzfeld, Oklahoma City, for appellant.

DOOLIN, Justice.

Petitioner Ralph McCoy, (Homeowner), was awarded actual damages under an insurance policy with respondent Oklahoma Farm Mutual Insurance Company, (Insurer). The same jury also returned a verdict for Homeowner on his bad faith claim against Insurer, and awarded actual and

punitive damages arising from Insurer's handling of Homeowner's claim. Upon review, the Court of Appeals affirmed the jury's verdict which held Insurer contractually liable under its policy.

However, the appellate court opined that the jury verdict should have been reduced by the amount Insurer paid to Homeowner's mortgagee. The intermediate court also reversed the verdict as to Homeowner's bad faith claims against Insurer, and the trial court's award of attorneys' fees. Finally, the Court of Appeals remanded the cause for a redetermination of attorneys' fees arising from Homeowner's contractual claim only.

Homeowner's residence in Mangum, Oklahoma and his personal property were destroyed by fire. Homeowner filed a proof of loss and a statement of personal property lost and damaged under an insurance policy. Homeowner alleged that his loss was caused by faulty wiring. The insurance policy provided, inter alia, coverage of $50,000.00 for damage to the structure, $25,000.00 for damage to personal property, and $10,000.00 for living expenses.

Insurer denied Homeowner's claim. Almost one year after Homeowner's loss, Insurer contended, 1) that the fire was intentionally set either by or at the direction of Homeowner, 2) that Homeowner made material misrepresentations and violated the fraud and false swearing provisions of the policy, and 3) that Homeowner increased or had knowledge of the hazard leading to the loss. Homeowner then filed this action against Insurer for breach of contract and bad faith refusal to pay a valid claim. At Insurer's request, the trial was bifurcated; that is, Homeowner's claim under breach of the insurance contract was separated from Homeowner's action alleging Insurer breached its implied duty to deal fairly and act in good faith.

In phase one of the trial, dealing with Homeowner's contractual claim against Insurer, the jury heard testimony and reviewed conflicting evidence concerning whether the fire was incendiary, electrical, or accidental in nature. Homeowner's fire investigation experts found no evidence of arson. The volunteer firemen who fought the blaze testified that due to the inaccessibility of a sufficient water supply and mechanical failure of the fire fighting apparatus, major structural damage was incurred to Homeowner's residence. The State Fire Marshal's office could not determine the actual cause of the fire, but ruled that it was accidental in nature.

However, Insurer's cause and origin expert, who investigated Homeowner's claim approximately eight days after the fire, claimed that he was able to smell fuel and found traces of an accelerant in the ruins of Homeowner's residence. Insurer's expert testified that the fire was deliberately set using white gas. Insurer's expert alleged that he saw a Coleman lantern at the scene of the fire; however, the lantern was gone after he returned from his lunch break. Homeowner presented evidence challenging the credibility of Insurer's expert and his investigation techniques. In addition to its alleged evidence of an incendiary fire, Insurer introduced evidence tending to show that Homeowner had motive, intent, and an opportunity to commit arson. Nevertheless, the jury found for Homeowner and awarded $55,000.00 in actual damages under Homeowner's contractual claim.

During the second phase of the trial, the jury heard testimony concerning whether Insurer breached its obligation of good faith and fair dealing in handling Homeowner's claim under the insurance policy. Homeowner contended that Insurer acted unreasonably in handling his claim, that Insurer's investigation of the claim was biased, and not conducted as claims are ordinarily handled in the insurance industry. Homeowner also alleged that Insurer was experiencing cash-flow problems and had informed its adjusters to stall payments of claims. The jury returned a verdict in favor of Homeowner on his bad faith claim, and awarded $30,000.00 in noncontractual damages and $30,000.00 in punitive damages. Subsequently, the trial court awarded Homeowner attorney's fees and costs for litigation of the contractual

phase of this action. From this adverse verdict, Insurer appealed.

The Court of Appeals affirmed the jury's verdict insofar as it held Insurer contractually liable under its policy. However, the appellate court reasoned that the jury's award of $55,000.00, arising from Homeowner's contractual claim, should have been credited by the amount Insurer paid to Homeowner's mortgagee.[1] Consequently, Homeowner's contractual damage award was reduced. Upon further review of the record, the Court of Appeals found "no evidence reasonably tending to support the verdict regarding Insurer's alleged unreasonable and bad faith breach of the insurance contract." In other words, as more fully addressed herein below the Court of Appeals improperly weighed the evidence in reaching its conclusion that there was a "legitimate dispute" between Insurer and Homeowner regarding the bad faith claim. Accordingly, the appellate court reversed the jury's verdict awarding Homeowner actual and punitive damages under his bad faith action.

Finally, the Court of Appeals reversed the trial court's award of attorney's fees, holding that Homeowner was not the prevailing party on the bad faith claim, inasmuch as the court had reversed the jury verdict for tort damages. The court remanded the cause for a redetermination of reasonable attorney's fees arising from Homeowner's prosecution of his breach of contract action only.[2] We granted Homeowner's petition for certiorari.

■ In its examination of the record, regarding Homeowner's bad faith claim against Insurer, the Court of Appeals found no evidence reasonably tending to support the jury's verdict. We hold that Homeowner's bad faith claim was properly submitted for determination by the jury, and that the jury's verdict should be reinstated and affirmed. In a case properly submitted to the jury, an appellate court will not weigh the evidence, nor will it invade the jury's peculiar province and substitute its judgment for that of the jury in the exercise of its function as a fact-finding body.[3]

There is no evidence that the bad faith damage verdict was actuated by passion, prejudice, improper sympathy, or based upon caprice, or without any reasonable foundation.[4] This Court will indulge in the presumption that the jury's verdict is correct, and if there is any competent evidence reasonably tending to support the verdict of the jury, this Court will not disturb the verdict and judgment based thereon.

■ The jury's verdict is conclusive as to all disputed facts and all conflicting statements, including the credibility of witnesses and the effect and weight to be given to conflicting or inconsistent expert testimony. Inasmuch as these are questions of fact to be determined by the trier of facts, whether court or jury, the same will not be disturbed on appeal since such are not questions of law.[5]

■ In the instant case, the jury, in awarding Homeowner damages under the insurance policy, must have believed that Homeowner did not set his house on fire, or procure his residence to be burned. We are of the opinion that there is competent evidence to support the jury's conclusion that the fire was not of an incendiary origin, that Insurer unreasonably withheld payment of Homeowner's claim, and that Insurer's handling of and investigation in response to Homeowner's loss was con-

1. See e.g., *Puckett v. Southeast Plaza Bank,* 620 P.2d 461 (Okla.App.1980) and *Savings Bldg. & Loan Ass'n. v. Seaman–Pacard Lmbr. Co.,* 170 Okla. 331, 40 P.2d 660 (1935).

2. 36 O.S.1981, § 3629.

3. *Mechanical Constructors, Inc. v. B–W Acceptance Corp.,* 412 P.2d 957 (Okla.1966); *Bane v. Anderson, Bryant & Co.,* 786 P.2d 1230 (Okla.1989).

4. *LeFlore v. Reflections of Tulsa, Inc.,* 708 P.2d 1068 (Okla.1985).

5. *Wiggins v. Sterne,* 293 P.2d 603, 606 (Okla.1956); *Walker v. St. Louis–San Francisco Ry. Co.,* 646 P.2d 593 (Okla.1982); *Holley v. Shepard,* 744 P.2d 945 (Okla.1987).

ducted in bad faith. The record, as paraphrased below supports the verdict.

Prior to the fire, Homeowner had purchased household goods, equipment, and tools, and was remodeling his residence through his own efforts and labor. On the night of the fire, Homeowner made a "manwich" sandwich, and then went to work. Homeowner's neighbor testified that he could see through a window in Homeowner's residence, and saw only smoke coming from the roof vents and out of every crack and crevice around the house. The Fire Chief of Mangum testified that he did not see any flames in the dwelling, only thick smoke. A Mangum City firefighter who entered the residence upon arrival at the scene of the fire testified that the only place he saw fire was in the ceiling of the kitchen-dining room area, and that burning sheet rock started hitting the floor. Another firefighter also stated that he did not observe any floor fires inside the house.

The testimony from eyewitnesses to the fire was inconsistent with the testimony from Insurer's expert, who alleged that the fire was incendiary in origin, and started by approximately one gallon of white gas. There was no evidence of independent fires in the two locations where Insurer's expert allege that white gas had been poured and set afire. Furthermore, testimony from the fire fighters indicated that the fire dispersed, and caused extensive damage to Homeowner's residence because the fire department was unable to deliver sufficient amounts of water at the fire scene for approximately 45 minutes to an hour after its arrival.

Insurer's field adjuster conducted her initial investigation, and she found nothing suspicious. The field adjuster had issued a request to the home office that Homeowner receive an advanced payment. However, that request for reasons unknown was subsequently cancelled by Insurer's home office. This undisputed fact supports Homeowner's permissible inference that Insurer subsequently acted unreasonably and in bad faith by denying Homeowner's claim almost one year after the fire. Eight days after the fire, Insurer sent its expert to the scene.

Although the firemen who fought the blaze and an official from the State Fire Marshal's office were unable to detect an accelerant, Insurer's investigator testified that even after eight days, he was able to smell fuel in the ruins. The record indicates that the scene of the fire was not preserved and signs of vandalism were also detected. Almost 240 days after the fire, Insurer denied Homeowner's claim.

Insurer's circumstantial evidence implicating Homeowner with arson was not believed by the jury. First, there was no direct proof connecting Homeowner with the cause of the fire. Second, although the cause of the fire, could not conclusively be determined by other expert fire investigators, the testimony of Insurer's cause and origin expert that the fire was incendiary in origin was effectively impeached by other experts who found no indicia of arson.

With the exception of Insurer's expert, no other fire investigation expert, including the State Fire Marshal's office and the Mangum Fire Department, found any evidence that the fire was arson related, or caused by the use of an accelerant. Under the conditions prevailing at the scene of the fire, none of the Mangum fire fighters smelled an accelerant and no eyewitness initially saw any flames emitting from the house. Homeowner's fire investigation expert testified to scientific experiments that he conducted which tended to show that since a considerable amount of water was used to extinguish the blaze, and considering the prevailing weather conditions in Mangum that the odor of white gas could not be detected with the human nose after the passage of eight days. Homeowner's fire investigation expert also testified that evidence of electrical problems was discovered, and that the shorting and crystallization of wires could have caused the fire.

Third, Insurer's circumstantial evidence of Homeowner's alleged motive, intent and opportunity to deliberately set the fire was not sufficient to convince the jury and the conflicting evidence apparently did not sup-

port Insurer's arson defense.[6] For example, Insurer alleged that Homeowner was in a financial bind, that his live-in girlfriend had terminated their relationship and left Homeowner one week earlier, and that Homeowner was at his residence approximately 30 to 40 minutes prior to the fire. However, Homeowner testified that, 1) prior to the fire he had paid all insurance premiums and mortgage payments due and he was not in a financial bind, 2) that his former wife and their daughter were planning to move from Georgia into his residence in Mangum, and 3) that he routinely stopped at his home between jobs to fix his evening meal.

Conflicting evidence was presented to the jury concerning whether Insurer "had a good faith belief, **at the time its performance was requested,** that it had a justifiable reason for withholding payment under the policy."[7] By its verdict, the jury answered in the negative. The jury did not believe that Homeowner, a former fireman, would deliberately set his home on fire, and then assist the Mangum City Fire Department in extinguishing another house fire.

With regard to Homeowner's bad faith claim, we have reviewed the record and find competent evidence which supports the jury's conclusion that Insurer did not have a reasonable good faith belief for withholding payment of Homeowner's claim. The jury evaluated conflicting evidence and determined that Homeowner was treated unfairly and unreasonably and that Insurer had no legitimate reason to deny Homeowner's claim. This we will not disturb. After further examination of the trial record, we do agree that credit upon the jury's verdict of $55,000.00 should have been allowed by the amount Insurer paid to Homeowner's mortgagee.[8]

Review of the record in this case reveals that the trial court abused its discretion by fixing an attorney fee which was too high in light of the facts and circumstances of the case.[9] Above all else, a lawyer's fee shall be reasonable.[10] The attorney fee awarded to plaintiff's attorneys is therefore reduced to the sum of $33,000.00, to be awarded to attorney Stephenson, and the sum of $27,000.00, to be awarded to attorney Perkins.

The opinion of the Court of Appeals is VACATED, and the JURY VERDICT is REINSTATED and hereby AFFIRMED, AS MODIFIED.

HODGES, V.C.J., and ALMA WILSON, KAUGER and SUMMERS, JJ., concur.

OPALA, C.J., and SIMMS, J., concur in part; dissent in part.

LAVENDER and HARGRAVE, JJ., dissent.

OPALA, Chief Justice, concurring in part and dissenting in part.

I cannot join in the court's drastic reduction of the counsel-fee award.

SIMMS, Justice, concurring in part; dissenting in part.

I dissent from that portion of the opinion awarding attorneys fees.

---

**6.** See, *Bowen v. Connecticut Fire Ins. Co. of Hartford, Conn.,* 193 Okl. 286, 143 P.2d 140, 141 (1943).

**7.** *Buzzard v. McDanel,* 736 P.2d 157, 159 (Okla.1987).

**8.** See n. 1, supra.

**9.** *State ex rel. Burk v. City of Oklahoma,* 598 P.2d 659, 661 (Okl.1979).

**10.** Rule 1.5(a), Oklahoma Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A.