39 F.3d 1192
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Mike W. KITTO, individually, Beverly A. Kitto, individually,
Plaintiffs-Appellants,
v.
FARMERS INSURANCE COMPANY, INC., a Kansas corporation,
Defendant-Appellee.
 No. 94-6001.
 United States Court of Appeals, Tenth Circuit.
 Nov. 14, 1994.
 
 Before BALDOCK, McKAY, and HENRY, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed.R.App.P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 This is an appeal from a grant of summary judgment to an insurer on its insured's claim of bad faith and unfair dealing. The district court held that the insureds, Mike and Beverly Kitto, failed to present evidence that Farmers Insurance Co. (Farmers), acted in bad faith in denying their underinsured motorist claim. The Kittos challenge the district court's grant of summary judgment and its denial of their motion for reconsideration. They maintain that the district court improperly discounted their expert's affidavit. They claim that the affidavit is admissible under Rules 703 and 705 of the Federal Rules of Evidence and is sufficiently detailed to defeat Farmers' summary judgment motion. The Kittos also argue that the district court failed to judge the bad faith claim by the entire course of conduct between the parties. We exercise jurisdiction under 28 U.S.C. 1291 and affirm.
 
 Background
 
 3
 The Kittos were injured in a car accident on April 28, 1991. Their car and two other vehicles struck a semi-truck that was blocking a portion of the highway. The trucking company admitted liability and tendered the limits of its one million dollar liability policy through an interpleader action, for disbursement to the injured parties. Beverly Kitto received $65,000, and Mike Kitto received $40,600.
 
 
 4
 Seeking additional compensation for their injuries, the Kittos filed a claim with Farmers under the uninsured/underinsured motorist provisions of their policies. Farmers denied the claim, explaining that it appeared that the trucking company's insurer had fully compensated the Kittos for their injuries. The Kittos filed this diversity suit, complaining that Farmers violated Oklahoma law by engaging in bad faith and unfair dealing.
 
 
 5
 Farmers moved for summary judgment, claiming that it had not acted in bad faith because there was a reasonable and legitimate dispute about the value of the Kittos' claim. In support of its motion, Farmers submitted deposition testimony of its adjuster, Mr. George, detailing the information known to Farmers at the time it denied the claim. Farmers represented the following material facts to be undisputed. Days after the accident, Mr. George contacted the Kittos and learned that they did not anticipate making an underinsured motorist claim because they expected compensation from the trucking company's insurer. The Kittos did not contact Farmers again until November 19, 1992, when their attorney demanded that Farmers tender the Kittos' underinsured motorist policy limits. On December 1, 1992, Mr. George informed the Kittos' attorney that he was investigating the claim and was reviewing medical records. On December 10, Mr. George made a ten-day status report, evaluating the claim based on the accident report and the medical records. The next day, Mr. George contacted the Kittos' attorney about the claim and requested additional medical records and other information that might influence the claim. Mr. George determined that the Kittos' claims were worth $25,000 to $30,000 each. His supervisor agreed. On December 17, 1992, Mr. George notified the Kittos' attorney that he had received and evaluated an additional medical report concerning Beverly Kitto. Mr. George explained that he still thought that Beverly Kitto had been fully compensated for her injuries. He stated, though, that he would continue to monitor the Kittos' claims. Farmers had no further contact with the Kittos until March 19, 1993, when it was served with the Kittos' complaint alleging bad faith and unfair dealing.
 
 
 6
 The Kittos admitted Farmers' version of the facts. In opposition to summary judgment, they relied primarily on the affidavit of their insurance expert, who opined that Farmers failed to properly investigate their claim and failed to adequately instruct the Kittos' attorney to provide information that was essential to a proper and complete evaluation of the Kittos' claim. The expert based his opinion on the chronology of events outlined by Farmers in its motion for summary judgment, except that the expert assumed that the Kittos sent additional documents to Farmers on January 5, 1993, stating that they would never be able to work again. The expert stated that he had reviewed Farmers' claim file and the Kittos' medical records. Based on the information presented to Farmers, "and especially the medical records that show that neither of the Kittos will be able to work again," the expert claimed that "no reasonable insurance claims adjuster would conclude that [the Kittos'] claims were only worth $25-30,000.00 each." Appellant's App. at 126. The Kittos did not, in opposition to summary judgment, submit any medical records or other documents that Farmers had in its possession when it denied the Kittos' claim.
 
 
 7
 Granting summary judgment to Farmers, the district court found "no compelling evidence reasonably tending to show that [Farmers] acted in bad faith." Id. at 193. In the court's words, "[F]rom November 19, 1992, to December 17, 1992, Mr. George gave careful consideration to the claim based on information provided by [the Kittos'] attorney, which was thin and often incomplete." Id. The court observed that even after Mr. George denied the claim, he expressed his willingness to reevaluate the claim if the Kittos submitted more detailed medical records or other information that might affect their claim. The court ruled that the expert's affidavit was insufficient to defeat summary judgment. The affidavit, the court explained,
 
 
 8
 is an example of a growing practice among aggrieved insured persons, who secure avowed experts to present affidavits and/or deposition testimony on insurance company practices. These persons attempt to establish material issues of fact on the "bad faith" issue by providing statements that are little more than conclusory allegations accusing Farmers of acting in "bad faith." The Court is not persuaded by these because they are not evidentiary.
 
 
 9
 Id. at 193 n. 2.
 
 Analysis
 
 10
 This court reviews the grant of summary judgment de novo. Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir.1991). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment "has the initial burden to show 'that there is an absence of evidence to support the nonmoving party's case.' " Bacchus Indus., 939 F.2d at 891 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). In response to a properly supported motion for summary judgment, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(citing First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)).
 
 
 11
 In Oklahoma, an insurer has an implied duty to deal fairly and in good faith with its insured. Oulds v. Principal Mut. Life Ins. Co., 6 F.3d 1431, 1436 (10th Cir.1993)(citing Christian v. American Home Assurance Co., 577 P.2d 899, 904 (Okla.1978)). To prevail on a claim of bad faith, "the insured must present evidence from which a reasonable jury could conclude that the insurer did not have a reasonable good faith belief for withholding payment of the insured's claim." Id. (citing McCoy v. Oklahoma Farm Bureau Mut. Ins. Co., 841 P.2d 568, 572 (Okla.1992)). As this court explained in Oulds, the trial court will not submit such a claim to the jury unless the insured presents facts which, when construed in the insured's favor, "establish[ ] what might reasonably be perceived as tortious conduct on the part of the insurer." See id. at 1437 (citing City Nat'l Bank & Trust Co. v. Jackson Nat'l Life Ins., 804 P.2d 463, 468 (Okla. Ct.App.1990)). The insurer's actions must be evaluated "in light of the facts [the insurer] knew or should have known at the time [the insured] requested the insurer to perform its contractual obligation." Id.
 
 
 12
 We agree with the district court that the Kittos failed to present facts which might reasonably support the conclusion that Farmers engaged in tortious conduct. Farmers knew that the Kittos had already collected more than $100,000, combined, for their injuries. The medical bills submitted to Farmers amounted to approximately $12,000 for Mike Kitto and $8,300 for Beverly Kitto. The evidence shows that Farmers legitimately disputed the valuation of the Kittos' claim. The record lacks any medical records, let alone medical records which reasonably should have prompted Farmers to obtain an independent evaluation of the Kittos' potential loss of future wages. Cf. McCoy, 841 P.2d 568 (bad faith claim properly submitted to jury where insurers' position was contrary to evidence).
 
 
 13
 Twice, Farmers solicited more detailed medical records or other information from the Kittos' attorney that might affect the Kittos' claims. Whether the Kittos provided additional records is unclear. Farmers acknowledged on December 17, 1992, that it received one additional medical report regarding Beverly Kitto's injuries. Farmers denies receiving further information from the Kittos after that date, however. The Kittos, on the other hand, rely on their expert whose opinion assumes that they provided and Farmers received certain documents in January 1993, stating that the Kittos will be unable to work the rest of their lives. The expert did not describe those documents, and the documents were not attached to the Kittos' brief in opposition to summary judgment.
 
 
 14
 We have carefully reviewed the record on appeal. The record lacks evidence that Farmers received any medical records or other information regarding the Kittos' claims after December 17, 1992. The expert's unsupported assumption that Farmers received documents in January 1993, stating that the Kittos would never work again, is a conclusory assertion that cannot create a genuine dispute about the underlying facts. See Nichols v. Hurley, 921 F.2d 1101, 1113 (10th Cir.1990)(evaluating whether affidavit created genuine issue of material fact "in light of the principle that 'conclusory allegations without specific supporting facts have no probative value.' " (quoting Evers v. General Motors Corp., 770 F.2d 984, 986 (11th Cir.1985)). The unsupported assumption appears to be the very basis of the expert's conclusion that Farmers acted in bad faith. See Appellant's App. at 126 ("When presented with [the chronology of events] and especially the medical records that show that neither of the Kittos will be able to work again, it is my opinion that no reasonable insurance claims adjuster would conclude that the Kittos' claims were only worth $25-35,000.00 each."). We hold that in the face of Farmers' denial that it received any documents after December 17, 1992, the expert's affidavit, which assumes Farmers received critical documents after that date, is not sufficiently detailed to create a genuine issue of material fact on the issue of bad faith. See Merit Motors, Inc. v. Chrysler Corp., 569 F.2d 666, 672-74 (D.C.Cir.1977)(holding that expert's conclusory opinion could not defeat summary judgment when opinion was contradicted by evidence in the record).
 
 
 15
 That the Federal Rules of Evidence do not require an expert to divulge the basis of his or her opinion, Rule 705, or to rely on facts admissible in evidence, Rule 703, makes no difference. As many courts have explained, "the issue of admissibility of an expert's opinion under Rules 703 and 705 is separate and distinct from the issue [of] whether the testimony is sufficient to withstand a motion for summary judgment under Rule 56." Ambrosini v. Labarraque, M.D., 966 F.2d 1464, 1470 (D.C.Cir.1992)(collecting cases).
 
 
 16
 In conclusion, we affirm the district court's grant of summary judgment in favor of Farmers because the Kittos failed to submit evidence that could reasonably support the conclusion that Farmers' conduct was tortious. Further, we cannot conclude that the district court abused its discretion, see Committee for the First Amendment v. Campbell, 962 F.2d 1517, 1523 (10th Cir.1992), in denying the Kittos' motion to reconsider the order granting summary judgment. The court applied the appropriate legal standard and considered the relevant evidence. Finally, we decline to consider the Kittos' abstract argument that the district court failed to acknowledge Farmers' continuing duty to deal fairly, even after the Kittos commenced this lawsuit, because the Kittos have not specifically explained how Farmers acted unreasonably during the course of this lawsuit.
 
 
 17
 The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470