# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

ABED DAMAJ,

       Plaintiff-Appellant,

v.

FARMERS INSURANCE COMPANY, INC., d/b/a Farmers Insurance Group of Companies,

       Defendant-Appellee.

No. 96-5197

## ORDER ON PETITION FOR REHEARING
### Filed December 22, 1997

Before **SEYMOUR**, Chief Judge, **EBEL** and **BRISCOE**, Circuit Judges.

Plaintiff-Appellant Abed Damaj ("Damaj") petitions for rehearing. The rehearing petition is GRANTED. Therefore, the Court will issue today a modified order and judgment, and the order and judgment of October 15, 1997, is withdrawn and vacated. For the information of the parties, we note that we have modified the original order and judgment to reflect our determination that Damaj

presented sufficient evidence to proceed on his claim for punitive damages. As a result, we reverse the district court's grant of summary judgment against Damaj on the issue of punitive damages.[1]

IT IS SO ORDERED.

Entered for the Court

PATRICK FISHER, Clerk

---

[1] On November 26, 1997, Damaj also filed a motion to strike a statement in the brief submitted by defendant-appellee Farmers Insurance Company, Inc. ("Farmers") responding to Damaj's petition for rehearing. Damaj argues that the statement suggests that we reconsider the original order and judgment and thus constitutes an improper petition for rehearing. Because we do not read the challenged statement in Farmers' brief as a request for rehearing and because Farmers does not petition for rehearing, we deny Damaj's motion to strike.

**F I L E D**
United States Court of Appeals
Tenth Circuit

**DEC 22 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ABED DAMAJ,

      Plaintiff-Appellant,

v.

FARMERS INSURANCE COMPANY,
INC., d/b/a Farmers Insurance Group
of Companies,

      Defendant-Appellee.

No. 96-5197
(D.C. No. 94-CV-531-M)
(N.D. Okla.)

**AMENDED ORDER AND JUDGMENT**[**]

Before **SEYMOUR**, Chief Judge, **EBEL** and **BRISCOE**, Circuit Judges.


      Plaintiff-Appellant Abed Damaj ("Damaj") appeals the district court's order

granting summary judgment in favor of Farmers Insurance Company, Inc.,

("Farmers") on Damaj's claim of bad faith breach of an insurance contract and

granting Farmers' motion to strike Damaj's punitive damages claim. We reverse.

**BACKGROUND**

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

Damaj purchased a fully customized 1989 Chevrolet Astro van on August 8, 1991, for $12,744. The van had approximately 39,000 miles on its odometer. When Damaj's van was stolen on January 8, 1994, it had approximately 85,000 miles on the odometer. The van has never been recovered.

Damaj reported the theft to Farmers on January 10, 1994. Ron Banks, the assigned adjuster, recorded a telephone conversation with Damaj on January 20, 1994, in which Banks asked Damaj about the model of his van, whether he had customization coverage on the van, the equipment on the van, whether there were any dents or dings on the van, the condition of the tires on the van, and whether Damaj had checked on the value of the van. Damaj stated that the van would have sold new for about $26,000.

Damaj testified in his deposition that he also told Banks during their telephone conversation that a van like his would sell for $12,000-$13,000, but Banks represented that he had information that such vans typically sold for $7,000-$8,000. When Damaj disputed Banks' estimates, Banks told Damaj he would call him back. Banks telephoned Damaj later that day and stated he could not justify paying more than $10,000 for the loss. Banks proceeded to obtain quotes by telephone from four area car dealers as to the value of the van, ranging from $8,500 to $10,000. Damaj presented evidence that Banks obtained these

quotes by first suggesting a price range and then asking the dealer if the figure sounded about right.

Damaj also testified in his deposition that at a later meeting in Banks' office, he asked Banks how he had arrived at the $10,000 value for his van. Banks stated that he had called several dealers in town, one of which was Riverside Chevrolet. Damaj visited Riverside Chevrolet and located a 1990 van similar to his, except that it did not have a VCR or CB radio and was not in as good condition, with 53,000 miles that was priced at $14,900.

In a telephone conversation on February 14, 1994, Banks offered to settle Damaj's claim for $10,000, less a $120 deductible. Damaj then visited Banks' office on February 16, 1994, refused Banks' offer, and asked for $13,000 for his van. On February 17, 1994, Farmers wrote Damaj, reiterating its offer to pay $9,880 for the van, and informing Damaj of the option of initiating an arbitration process to settle the dispute regarding the value of the van. Damaj did not respond to the letter.

Damaj filed this action against Farmers on May 2, 1994, in state court in Oklahoma seeking actual damages for breach of contract, damages in excess of $10,000 for bad faith breach of an insurance contract, and $600 million in punitive damages. On May 24, 1994, Farmers filed a notice of removal to federal court. Farmers moved for summary judgment on the bad faith claim and the claim

for punitive damages, and the district court granted the motion on February 16, 1996. The parties then consented to the resolution of Damaj's breach of contract claim by a magistrate judge. In an order dated July 29, 1996, the magistrate valued the van at $12,105, and awarded Damaj damages in the amount of $2,305. This amount represented the value of the van, less $9,880 which Farmer eventually had paid Damaj, less the $120 deductible, plus $200 for the loss of personal property from the van.

## DISCUSSION

We review a district court's grant of summary judgment de novo, applying the same legal standard used by the district court pursuant to Fed. R. Civ. P. 56(C).[1] Wolf v. Prudential Ins. Co., 50 F.3d 793, 796 (10th Cir. 1995). Summary judgment is inappropriate when, after viewing the record in the light most favorable to the non-moving party, there is a genuine dispute as to a material fact. Id. Neither we nor the district court should weigh the evidence and determine the truth of the matter or otherwise resolve issues of disputed facts when considering

---

[1] The district court granted Farmers' motion to strike Damaj's punitive damages claim by concluding that Damaj presented insufficient evidence showing the necessary factual basis to support a claim for punitive damages. Thus, although the district court characterized its ruling dismissing Damaj's punitive damages claim as the grant of a motion to strike, the district court sub silentio actually issued an order granting summary judgment on the punitive damages claim. As a result, the standard of review for an appeal of a summary judgment ruling apply to the district court's motion to strike.

- 4 -

a summary judgment motion. See Concrete Works of Colorado, Inc. v. City and County of Denver, 36 F.3d 1513, 1518 (10th Cir. 1994), cert. denied, 115 S. Ct. 1315 (1995).

Thus, in the context of this appeal, we do not ask whether the record reveals some evidence supporting the district court's ruling. Rather, we ask whether Damaj, the non-moving party, supported his claim with enough evidence to raise a question of material fact that should be resolved at trial. Because the evidence presented by Damaj was sufficient to put into dispute Farmers' defense that it acted in good faith, we must conclude that summary judgment on the issue of bad faith was inappropriate in this case. In addition, we find that Damaj offered enough evidence to support his claim for punitive damages so that summary judgment was inappropriate on this issue as well.

## I. Bad Faith

Under Oklahoma law, an insurance company has an implied duty to deal fairly and act in good faith with its insured. Timberlake Constr. Co. v. U.S. Fidelity & Guar. Co., 71 F.3d 335, 343 (10th Cir. 1995) (citing Christian v. American Home Assurance Co., 577 P.2d 899, 904 (Okla. 1977)). The essence of the tort of bad faith is the unreasonableness of the insurer's actions. Id. (citing Conti v. Republic Underwriters Ins. Co., 782 P.2d 1357, 1360 (Okla. 1989)). Bad faith conduct includes "the unjustified withholding of payment due under a

policy." McCorkle v. Great Atlantic Ins. Co., 637 P.2d 583, 587 (Okla. 1981). An insurer does not breach the duty of good faith by litigating a dispute with its insured, however, if there is a "legitimate dispute" as to coverage or the amount of the claim, and the insurer's position is reasonable and legitimate. Timberlake, 71 F.3d at 343. Nevertheless, by presenting evidence casting doubt on the legitimacy of an insurer's good faith justification for disputing a claim, a plaintiff can defeat summary judgment and present his case to the jury. See McCoy v. Oklahoma Farm Bur. Mut. Ins. Co., 841 P.2d 568 (Okla. 1992). Even a "legitimate dispute as to coverage will not act as an impenetrable shield against a valid claim of bad faith" where the insured presents sufficient evidence reasonably tending to show bad faith or unreasonable conduct. See Timberlake, 71 F.3d at 343 (citing Oulds v. Principal Mut. Life Ins. Co., 6 F.3d 1431, 1440 (10th Cir. 1993)).

We find that Damaj presented evidence regarding three issues of material fact that, when taken as true, support a bad faith cause of action. First, Damaj presented the affidavit of an expert witness qualified to comment on insurance practices, Bob R. Stephens, who performed a thorough investigation of Farmers' conduct in this case. Stephens stated that the "investigation conducted by Farmers was inadequate to place a fair market value on the plaintiff's van." (App't App., Vol. I, ex. 5 at 190 ¶ 14). Stephens specifically criticized Farmers'

practice of obtaining price quotes for stolen vehicles from used car dealers by suggesting a price range to the dealers and asking if such figures sound about right:  "Farmers failed to perform a fair valuation of the plaintiff's van because of its failure to follow accepted valuation practices by reliance on independent and verifiable written sources of information."  (Id. at 190-91 ¶ 15).  Although Farmers presented evidence that its method of obtaining quotes on a van which had been stolen, and therefore could not be inspected, conformed with industry practice, Stephen's affidavit is evidence to the contrary, and we should not try to resolve that dispute on summary judgment.  Instead of weighing the evidence to decide whether one version of the facts appears more plausible than another, we only should evaluate whether the non-moving party presented some evidence to support his case.  Certainly, the expert's testimony presents a triable issue of fact concerning whether Farmers (1) in fact conformed to industry standards and (2) undertook an adequate investigation to determine an accurate value of the stolen vehicle.

Second, Damaj presented evidence that when offering him a settlement of $10,000 for his claim, Banks told him that the van was worth only between $7,000 and $8,000, even though Banks had not yet received any price quotes for the van.  Thereafter, Banks obtained price quotes between $8,500 to $10,000, but did not disclose these figures to Damaj until well after Banks first made the

$10,000 settlement offer. This fact is relevant because the erroneous representation by Banks could have given Damaj the impression that the $10,000 offer was generously excessive in light of the price quotes Banks ultimately received. In fact, it was within the range of those quotes, albeit at the high end. Such an impression could be construed by the jury as part of a bad faith effort to induce Damaj to accept the $10,000 figure. When added to the evidence showing that Banks suggested the price range he obtained from the dealers, a reasonable jury could conclude that Farmers adopted a pre-determined value for the van and then attempted to support that value by relying on incomplete and improper third party appraisals. The fact that Banks suggested a price range to the dealers just above the $7,000 to $8,000 figure he quoted to Damaj could indicate that Banks had no intention to obtain an accurate price quote.

Third, Banks failed to consult the separate customization policy Damaj had purchased for the van from Farmers in order to obtain an accurate accounting of all of the van's customized features. Farmers contends that by providing most of this information to Farmers when he filed his claim, Damaj relieved Farmers of any burden to investigate the matter further. However, it is undisputed that even a cursory review of the policy would have revealed several customized features not contained in the Vehicle Valuation Settlement Report prepared by Banks. (Id. at 143). They include a rear ladder, a rear tire rack and cover, and a transmission

coolant system. Such additional information would have been relevant to any effort to determine an accurate value of the vehicle. Under Oklahoma law, intentionally disregarding "undisputed facts supporting the insured's claim" constitutes bad faith conduct by an insurer, especially when "a more thorough investigation would have produced relevant information." Timberlake, 71 F.3d at 345.

Even if Damaj had some responsibility under the policy to notify Farmers of all items lost as a result of the theft, we conclude that Farmers still had an affirmative duty under Oklahoma law to act in good faith and review information to which it had easy access despite any inadvertent omissions by Damaj. Moreover, Damaj could be said to have fulfilled his duty to provide an accurate accounting of his loss by fully informing Farmers about the van's customized features when purchasing the customization policy and then specifically reminding Banks of the existence of the customization coverage. (App't App., Vol. I, ex. 4 at 5). Finally, Stephens' affidavit notes that Farmers' "failure to negotiate with the plaintiff or to determine the full and exact nature and extent of the equipment and accessories located on and in the plaintiff's van is an improper method by which to 'adjust' a claim." (App't App., Vol. I, ex. 5 at 190 ¶ 14).

Farmers may very well prove at trial that it did indeed act in good faith. However, determining which party is the more likely to prevail at trial is not

appropriate when reviewing a grant of a motion for summary judgment. Given the procedural posture of this case on appeal, we must ask only whether the non-moving party presented sufficient evidence to dispute the factual basis for the prevailing party's summary judgment motion. We conclude that Damaj met his burden and that we should reverse the district court's ruling.

## II. Punitive Damages

To recover punitive damages, the evidence offered by a plaintiff must "show some elements of fraud, malice, or oppression" or gross negligence. McLaughlin v. National Ben. Life. Ins. Co., 772 P.2d 383, 387 (Okla. 1988). The evidence offered by Damaj, if proven at trial, could be construed by the jury to establish intentional "deception and dishonesty" by Farmers sufficient to support an award of punitive damages for bad faith breach of an insurance contract under Oklahoma law. Willis v. Midland Risk Ins. Co., 42 F.3d 607, 615999 (10th Cir. 1994) (applying Oklahoma law). Thus, we reverse the district court's order striking Damaj's punitive damage claim.

## CONCLUSION

Therefore, we REVERSE the district court's ruling granting summary judgment on the bad faith claim, REVERSE the district court's ruling granting summary judgment on the claim for punitive damages, and REMAND for further proceedings not inconsistent with this opinion.

ENTERED FOR THE COURT


David M. Ebel
Circuit Judge